UNITED STATES, Appellee

v

BURNACE W. HARDY, Specialist Four, U. S. Army, Appellant

11 USCMA 487, 29 CMR 303

No. 13,610

Decided May 20, 1960

*First Lieutenant Jerome D. Meeker* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ralph Herrod.*

*First Lieutenant Richard E. Wiley* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy* and *First Lieutenant Paul R. Walsh.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

I

When arraigned before a general court-martial, the accused pleaded guilty to resisting apprehension, two specifications of unlawful apprehension of military police officials, wrongful appropriation of a motor vehicle, and two assaults with a dangerous weapon, violations of Articles 95, 97, 121, and 128, Uniform Code of Military Justice, 10 USC §§ 895, 897, 921, and 928, respectively. Prior to his arraignment

488

and with the advice and consent of his counsel, the accused addressed a communication to the convening authority in which he volunteered to enter a plea of guilty to all of the alleged offenses if the convening authority would extend him leniency by affirming only so much of the sentence adjudged by the court-martial as provided for a dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for three years, and reduction to the lowest enlisted grade. In the letter, the accused averred he had been informed of his rights to enter a plea of not guilty with its concomitant burden upon the Government to prove him guilty beyond a reasonable doubt, and further acknowledged that he was admitting his guilt to offenses which authorized a maximum sentence of confinement at hard labor for fifteen years with the other mentioned accessories. The offer was accepted and at the trial a stipulation of facts was agreed upon which was introduced in evidence for the benefit of the court. Prior to the time the court members retired to vote upon the sentence, defense counsel made the following motion:

"DEFENSE COUNSEL: At this time the defense would like to make a motion that the court be instructed for sentencing purposes only, Charge II, Specification 1 and Charge IV, Specification 1, will be multiplicious for sentencing purposes, likewise Specification 2 of Charge II, and Specification 2 of Charge IV."

The law officer denied the motion and instructed the court that the maximum sentence imposable for all of the offenses to which the accused had pleaded guilty was dishonorable discharge, total forfeitures, confinement at hard labor for a period not to exceed fifteen years, and reduction to the lowest enlisted grade. Thereafter, the court sentenced the accused to a dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for five years, and reduction to the lowest pay grade. In accordance with the pretrial understanding, the convening authority reduced the period of incarceration to three years but otherwise affirmed the sentence.

A board of review in the office of The Judge Advocate General of the Army considered several assignments of error but found only one which it believed to be meritorious. It concluded that two specifications were multiplicious for sentencing purposes and that the law officer erred when he announced the maximum term of confinement as fifteen years instead of the proper period of twelve years. In light of the error, the board reassessed the sentence but made no reduction, for it determined the sentence as approved by the convening authority was appropriate.

For convenience of the reader, we quote the relevant specifications:

"Charge I: Violation of the Uniform Code of Military Justice, Article 95.

"Specification: In that Specialist Four (E-4) Burnace W. Hardy, U. S. Army, Medical Detachment, U. S. Army Hospital, Fort Gordon, Georgia, did, at Augusta, Georgia, on or about 8 June 1959, resist being lawfully apprehended by Sergeant First Class George H. Waldroup, an armed force policeman.

"Charge II: Violation of the Uniform Code of Military Justice, Article 97.

Specification 1: In that Specialist Four (E-4) Burnace W. Hardy, U. S. Army, Medical Detachment, U. S. Army Hospital, Fort Gordon, Georgia, did, at Augusta, Georgia, on or about 8 June 1959, unlawfully apprehend Sergeant First Class George H. Waldroup.

"Specification 2: In that Specialist Four (E-4) Burnace W. Hardy, U. S. Army, Medical Detachment, U. S. Army Hospital, Fort Gordon, Georgia, did, at Augusta, Georgia, on or about 8 June 1959, unlawfully apprehend Sergeant Neal R. Slagle.

• • • • •

"Charge IV: Violation of the Uniform Code of Military Justice, Article 128.

"Specification 1: In that Specialist Four (E-4) Burnace W. Hardy,

U. S. Army, Medical Detachment, U. S. Army Hospital, Fort Gordon, Georgia, did, at Augusta, Georgia, on or about 8 June 1959, commit an assault upon Sergeant First Class George H. Waldroup by forcing the said Sergeant First Class George H. Waldroup into a motor vehicle against his will, and by aiming at the back of the said Sergeant First Class George H. Waldroup's head a dangerous weapon, to wit: a loaded, .32 caliber pistol.

"Specification 2: In that Specialist Four (E-4) Burnace W. Hardy U. S. Army, Medical Detachment, U. S. Army Hospital, Fort Gordon, Georgia, did, at Augusta, Georgia, on or about 8 June 1959, commit an assault upon Sergeant Neal R. Slagle by aiming at the said Sergeant Neal R. Slagle's person a dangerous weapon, to wit: a loaded, .32 caliber pistol."

On appeal to us, the accused advanced the contentions that the board of review and the law officer erred when they refused to find that the second specification under Charges II and IV were multiplicious and that the specification of Charge I was multiplicious with the specifications of Charges II and IV. He also made an additional assignment which challenged the providence of the plea of guilty, assertedly because the specifications setting out unlawful apprehension did not state, and the facts did not prove, an offense. We granted review to settle those issues, and to present the questions in an orderly sequence, we consider them in reverse order.

## II

In asserting that the plea was improvident, the accused argues that Article 97, Uniform Code of ■ Military Justice, supra, is intended to be limited in application to military officials who are authorized to apprehend or arrest. We find to the contrary because to follow the argument requires that we ignore the plain meaning of the clear and unambiguous language used by Congress. The Article provides as follows:

"Any person subject to this chap-

ter who, except as provided by law, apprehends, arrests, or confines any person shall be punished as a court-martial may direct."

The wording of the Article indicates a Congressional intent to sweep within the law all persons subject to the Code, and that interpretation is buttressed by paragraph 176 of the Manual for Courts-Martial, United States, 1951, which provides:

"Any unlawful restraint of another's freedom of locomotion will result in a violation of this article. The offense may be committed by one who, being duly authorized to apprehend, arrest, or confine others, exercises such authority unlawfully, *or by one not so authorized who effects the restraint of another unlawfully.*" [Emphasis supplied.]

Had Congress intended to have the Article apply to a limited class of persons such as suggested by the accused, it would have been an easy task to have so worded the law. In the absence of language of a restrictive nature and with nothing in the legislative history of the offense to indicate a limited coverage, we find no reason to rewrite the statute to exclude a large percentage of servicemen and women.

The board of review considered this issue and determined it adversely to the accused. The views expressed by that tribunal are in accord with our concepts, and we therefore adopt this portion of its opinion as supplemental thereto:

"We find no merit in the contention that the facts set forth in the stipulation fail to establish the offense of unlawful detention denounced by Article 97 of the *Code.* We have recently had occasion to examine the legislative history of this article and have found nothing therein which would support the accused's argument that Congress intended to make it applicable only to those who abused the authority vested in them by the *Code,* to apprehend members of the military services or to order military persons into arrest or confinement. We consider that the plain language

of the Article makes it applicable to all persons subject to the *Code* whether they act under the color of authority or not, and that the construction placed upon the article by paragraph 176 of the *Manual* is correct. CM 364634, *Fritts,* 12 CMR 232, pet. den., 12 CMR 204. We are of the opinion that the scope of the article is sufficiently broad to warrant conviction of the offense of unlawful detention of another if the evidence establishes a false imprisonment as that term is used in the law of torts and in the statutes of civilian jurisdictions. *1 Wharton's Criminal Law and Procedure,* section 385."

While the essential facts were established by the plea of guilty, the stipulation shows the accused did not have the authority to apprehend. But as indicated in our previous discussion, the lack of authority does not undercut the judicial confession of guilt. Accordingly, we resolve the first issue against the accused.

### III

Having determined that the questioned specifications state, and the facts establish, the offense of unlawful restraint, we move on to dispose of the other issues. The specifications covering the other offenses furnish some assistance in solving the multiplicity problem, but there is a written stipulation of facts which supplies us with additional information. From those two sources we gather the following facts, noting, however, that times are not of record. Sergeant Neal R. Slagle and SFC George H. Waldroup of the Apprehension Section, Office of the Provost Marshal, proceeded to the home of the accused to apprehend him and return him to Fort Gordon, Georgia. After entering his home and making their identity and purpose known, they encountered difficulty, for the accused exhibited a loaded .32 caliber pistol. There is no evidence that at this time he used it in a manner likely to produce grievous bodily harm. However, because of anticipated difficulties, the sergeants left the house and proceeded to the vehicle which they had parked in front of accused's residence. SFC Waldroup was seeking to send a plea for help over the radio network when the accused approached the vehicle and, at the point of the gun, forced both sergeants to leave the car and enter a neighbor's home. After a short stay in the neighbor's living room, the sergeants were able to part company with the accused and barricade themselves in a bedroom. The accused was not to be deterred by the barred door, for he went outside the premises to a window opening into the bedroom and, by threatening the sergeants with the weapon, forced them back into the living room. Thereafter, he completed his criminal venture by marching them to the vehicle, where he issued directions that Sergeant Slagle was to drive and SFC Waldroup was to occupy the front right seat. He placed himself in the rear seat of the vehicle, and, holding his captives at gun point, stated the destination. After a short journey, the car was veered into the path of an oncoming police vehicle, whereupon the accused was disarmed and taken into custody.

The accused contends that the facts related generally above show nothing but a single continuing assault upon the sergeants which the Government has broken into separate steps to increase the punishment. To support that assertion he argues that the sergeants were in constant danger of serious bodily injury from a dangerous weapon during the entire episode and that the other alleged offenses are merely fragments of the principal crime and necessarily included therein.

Before discussing the specifics, we suggest that when the misbehavior of the accused is considered without being measured by a refined yardstick, the severability of the offenses becomes readily apparent. Certainly the facts show he resisted apprehension, misappropriated an automobile, imprisoned two sergeants, and assaulted them by using a weapon in a dangerous manner, and he committed each crime independent of the others. Moreover, he was not uninformed about the number and types of offenses he had perpetrated,

for in his written offer to plead guilty he volunteered the information that the maximum term of imprisonment which could be imposed was fifteen years. That period could only be the maximum if the offenses were considered as being separate. Accordingly, the accused cannot seriously contend he was lulled into pleading guilty because of an erroneous belief on multiplicity.

Accused, in support of this assignment of error, contends there was only one transaction, but the █ general rule on determining when offenses are separate for punishment purposes is brought into question only in a case where there is a single act. If there are separate performances, there is no problem for the rule which is stated in paragraph 76a(8), Manual for Courts-Martial, United States, 1951, shows when the principle is applied. It provides:

"The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction. The test to be applied in determining whether the offenses of which the accused has been convicted are separate is this: The offenses are separate if each offense requires proof of an element not required to prove the other."

We have announced variations of this rule, some of which will be mentioned later, but they are of no assistance to the accused in this instance. We, therefore, look to the above rule to evaluate the assertion that the second specification of Charges II and IV are multiplicious when interpreted in conjunction with the facts. One specification with which we are concerned alleges that the accused unlawfully apprehended Sergeant Neal R. Slagle while another states an assault on the same sergeant with a dangerous weapon. Even though each crime has different elements, it is asserted the offenses are not separate because it can be said that the illegal apprehension was, as a matter of fact and law, merged with and became an ingredient of the aggravated assault. However, when the facts are considered reasonably, that conclusion

need not be reached. Undoubtedly an unlawful apprehension commenced when the sergeants were marched at the point of a gun to the home of the neighbor, and it could be considered as having ended when they escaped and barricaded themselves in a bedroom. But, assuming one continuous illegal apprehension from the first use of the pistol until the last, in the course of committing that crime there were, at the very least, two separate and distinct aggravated assaults—the first when the accused pointed the weapon at the sergeants and ordered them from the car, and the second when he trained the pistol on them through the window. But, laying aside the niceties necessary to show the █ beginning and ending █ cycles of each alleged crime, the assaults with a dangerous weapon and the illegal apprehension are not multiplicious because by every recognized test they are separate. Each requires proof of an element not required to prove the other, United States v Yarborough, 1 USCMA 678, 5 CMR 106; they are not merged under the one act theory, United States v Brown, 8 USCMA 18, 23 CMR 242; the apprehension is not a lesser included offense of the assault, United States v McVey, 4 USCMA 167, 15 CMR 167; they are proscribed by separate Articles of the Code and the norm to be protected is entirely different, United States v Beene, 4 USCMA 177, 15 CMR 177.

The same general analysis can be made in connection with the other offenses, albeit they can be █ more easily differentiated. █ Resisting apprehension was an act in opposition to the efforts of the sergeants, and it required proof that the sergeants were lawfully apprehending the accused and he resisted their efforts. When, however, the sergeants had temporarily ceased their efforts to take him into custody and the accused became the aggressor in a series of crimes, there was a distinct break in the nature and character of offenses and new elements in no way necessary to prove the unlawful resistance became an essential part

492

of the offenses. Misappropriation of an automobile requires proof of elements foreign to those required for resisting apprehension, and the elemental composition of the crimes of resisting apprehension and aggravated assault puts them poles apart. The other tests, when applied, show the separability of the last mentioned crimes but detailed application of the facts to the rules is not deemed necessary.

Finding no multiplicity, we affirm the decision of the board of review.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):
I dissent.

The author of the principal opinion concludes that a violation of Uniform Code of Military Justice, Article 97, 10 USC § 897, may be committed by any person who unlawfully detains another and that the charges in this cause are completely separate for the purpose of determining the maximum sentence which may be imposed. I disagree entirely with the former proposition and in part with the latter.

The accused, pursuant to his plea, was found guilty of resisting apprehension, in violation of Uniform Code of Military Justice, Article 95, 10 USC § 895; two specifications of unlawful apprehension, in violation of Code, supra, Article 97, 10 USC § 897; wrongful appropriation of a motor vehicle, in violation of Code, supra, Article 121, 10 USC § 921; and two specifications of assault with a dangerous weapon, in violation of Code, supra, Article 128, 10 USC § 928. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, reduction to the lowest enlisted grade, and confinement at hard labor for five years. As a result of a pretrial agreement, the convening authority reduced the period of confinement involved to three years but otherwise approved the sentence. The board of review found the charges in part multiplicious and purged the error by reassessment of the sentence. We granted accused's petition for review on further issues of multiplicity and the question whether his pleas of guilty to charges of unlawful apprehension were improvident in view of the contention that Code, supra, Article 97, is limited to misconduct by military law enforcement personnel.

As is not unusual in guilty plea cases, we are offered a scanty factual basis for the charges in the record. All proof was stipulated, and the agreed testimony in its entirety is as follows:

"That on 8 June 1959 Sp-4 Burnace W. Hardy did not report for duty at the United States Army Hospital, Fort Gordon, Georgia. Sergeant Neal R. Slagle and SFC George H. Waldroup of the Apprehension Section, Office of the Provost Marshal, Fort Gordon, Georgia, on information from the Medical Detachment, United States Army Hospital, Fort Gordon. Georgia, proceeded to the home of Sp-4 Burnace W. Hardy on Rachel Street, Augusta, Georgia, to apprehend the accused and return him to Fort Gordon, Georgia. Upon entering the Hardy home the Sergeants made their identity and purpose known to the accused. That the accused refused to accompany Sergeant Slagle and SFC Waldroup to Fort Gordon and prevented the said Sergeants from gaining custody over him by producing a loaded .32 caliber pistol. That Sergeant Slagle and SFC Waldroup left the accused's house and went to the vehicle which was parked in front of the accused's home. SFC Waldroup attempted to call for help over the vehicle's radio when Hardy came out of the house and ordered the two Sergeants to accompany him to a neighbors home. While in the neighbors home, the two Sergeants locked themselves in a bedroom while the accused was making a telephone call. Hardy then went outside to the bedroom window and pointing the gun through the window into the room ordered the Sergeants back into the living room. The accused then ordered the two Sergeants to go to their vehicle. Sergeant Slagle was ordered into the drivers seat and SFC Waldroup was ordered into the front right seat. Hardy then entered the rear seat of the vehicle. Sergeant Slagle was directed by Hardy to drive to Gwinnet Street ex-

tension. While driving on Gwinnet Street extension, Sergeant Slagle veered into the path of an oncoming Augusta Police car at which time SFC Waldroup disarmed Hardy. SP-4 Hardy was then turned over to the Augusta Police by SFC Waldroup."

Based on these facts, accused was charged separately with resisting apprehension by Waldroup; unlawfully apprehending Waldroup; unlawfully apprehending Slagle; wrongfully appropriating the military police vehicle; assaulting Waldroup with a dangerous weapon; and assaulting Slagle with a dangerous weapon.

## I

The first issue before us is whether a member of the armed forces other than a law enforcement agent may commit the offense of unlawful apprehension. Code, supra, Article 97, provides:

"§ 897. Art. 97. **Unlawful detention**

"Any person subject to this chapter who, except as provided by law, *apprehends, arrests, or confines any person* shall be punished as a court-martial may direct." [Emphasis supplied.]

True it is, as Judge Latimer suggests, that we may not ignore the plain meaning of clear and unambiguous language when it is used in a statute. This does not mean, however, that an act may be dissected and various phrases considered *in vacuo*. Indeed, one of the basic principles of statutory construction· is that an enactment of Congress must be considered as a whole and the legislative intent derived from the sum of its language. Sutherland, Statutory Construction, 3d ed, § 4703; Ex parte Public National Bank, 278 US 101, 73 L ed 202, 49 S Ct 43 (1928). As was said in International Trust Co. v American Loan & Trust Co., 62 Minn 501, 65 NW 78 (1895), at page 79:

". . . It is always an unsafe way of construing a statute or contract to divide it, by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions. An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascertained from the context, the nature of the subject treated of, and the purpose or intention of the parties who executed the contract, or of the body which enacted or framed the statute or constitution."

An examination of Code, supra, Article 97, discloses its application only to unlawful apprehensions, arrests, and confinements. These are terms of art under the Uniform Code and refer only to restraints imposed by those acting in the capacity of persons enforcing the law. Code, supra, Articles 7, 9, 10 USC §§ 807, 809. One may exercise physical control over an individual, but he cannot, in the sense of the Code, take him "into custody," unless he purports to act pursuant to authority delegated by the Code. He cannot subject him to the moral restraint of an order limiting his movements, and thus place him in "arrest" unless he possesses the authority to do so under Code, supra, Article 9. A similar consideration applies to the exercise of physical restraint amounting to confinement. In short, the use of the technical terms for the various sorts of control over an individual under the Code convinces me that Congress intended Code, supra, Article 97, to provide for the punishment of those officers and other individuals who use their Code-conferred powers of arrest, apprehension, and confinement arbitrarily to harass personnel subject to their control.

Another principle of statutory construction reinforces my belief that Article 97 is so limited. Sutherland, supra, points out that statutes *in pari materia* are to be construed together. Sutherland, supra, § 5201. A reference to the grouping of the punitive articles in the Uniform Code will disclose that Article 97 is found at the end of the sections relating to the various punitive sanctions for violation of the limits of lawfully imposed restraints. Thus, Article 95, 10 USC § 895, pun-

ishes resisting apprehension, breach of arrest, and escape from confinement. Article 96, 10 USC § 896, punishes releasing of prisoners without proper authority. Indeed, Article 98, 10 USC § 898, following the section under consideration, is also related to violations of codal procedures. Located as it is among the other Articles relating to breaches of lawfully imposed restraints, I am compelled to believe that Congress sought to punish violations of Article 97 only when they also referred to the same manner of restrictions.

Finally, examination of the legislative history of Code, supra, Article 97, compels the same conclusion. During the hearings before the House Armed Services Committee, the following explanation was made concerning Article 97:

> "*References.*—Proposed A. G. N., article 9 (51). *Commentary.—This article should be read in conjunction with articles 7 and 9, wherein those persons authorized to apprehend, arrest or confine are set forth.*" [Emphasis partially supplied.] [Hearings before House Armed Services Committee on H.R. 2498, 81st Congress, 1st Session, page 1227.]

During the hearings before the Senate Armed Services Committee, Major General Thomas H. Green, The Judge Advocate General of the Army, suggested that proposed Article 97 be amended in order to prevent prosecutions for purely technical violations by law enforcement personnel. Hearings before Senate Armed Services Committee on S. 857 and H. R. 4080, 81st Congress, 1st Session, page 274. While that suggestion does not appear to have been adopted, it evinces an understanding on the part of the Army's chief military law officer that the Code section was designed to apply only to law enforcement personnel.

The contrary conclusion reached by Judge Latimer is based solely upon the interpretation of Code, supra, Article 97, contained in paragraph 176 of the Manual for Courts-Martial, United States, 1951. Read as a whole, this paragraph indicates that the offense of unlawful detention may be committed by any person subject to the Code. Such a situation is not surprising, for we have heretofore been required to set aside attempts by the drafters of the Manual to circumvent the intent of Congress. See United States v Kelley, 7 USCMA 584, 23 CMR 48; United States v Jenkins, 7 USCMA 261, 22 CMR 51; United States v Kraskouskas, 9 USCMA 607, 26 CMR 387. Surely, it cannot govern where the history and construction of the statute as a whole establishes that the legislative purpose was to the contrary. Accordingly, I am forced to record my disagreement with the disposition of this issue.

II

The second issue before us is whether the law officer acted incorrectly in failing to treat the charge that accused unlawfully apprehended Sergeant Slagle as being multiplicious with the allegation that he assaulted Slagle with a dangerous weapon. I am convinced that he did.

The Government's argument and the position adopted by the author of the principal opinion unreasonably divide accused's conduct into segments with respect to these offenses in order to separate them under the various tests announced by this Court. In adopting this approach, I believe they overlook the standard we laid down in United States v Posnick, 8 USCMA 201, 24 CMR 11. There we said, at page 203:

> "As it is true that a rose by any other name would smell as sweet, so it is equally true that a man may be punished only once for the same offense regardless of how that offense is labeled. . . .

> "To be separate offenses *each* offense must require proof that is not required to prove the other. This does not occur, as we have pointed out above, when the offense is lesser included in the offense with which it is being compared. *To state it another way, if the evidence sufficient to support a conviction on one charge will support a conviction on another charge, the two charges are*

**495**

*not separate."* [Emphasis partially supplied.]

See also United States v Bridges, 9 USCMA 121, 25 CMR 383, and United States v Renton, 8 USCMA 697, 25 CMR 201. Moreover, in United States v Brown, 8 USCMA 18, 23 CMR 242, and United States v Rosen, 9 USCMA 175, 25 CMR 437, we pointed out that a single, continuing act may not be broken into a series of steps in order to support the charging of various offenses. See also United States v Leach, 5 USCMA 466, 18 CMR 90. In sum, we have laid down two tests for multiplicity, each of which blends into the other:

(a) If the same evidence is used to prove accused's guilt of separate charges, the offenses are multiplicious for sentence purposes; and

(b) If the specifications merely charge the same act as violations of different sections of the Code, the charges are equally multiplicious.

Consideration of the stipulated proof in the instant case immediately demonstrates that there were but two transactions between the military police and the accused. Initially, they entered his home and attempted to apprehend him. Unsuccessful in the face of his display of force, they departed from the premises and returned to their vehicle. These facts properly supported the allegation that he resisted lawful apprehension. The second transaction commenced when he emerged from his residence and, by use of his pistol, continuously exercised physical control over their movements until they eventually managed to overcome him. Judge Latimer would break this latter transaction into two parts on the basis that the unlawful apprehensions ended and new assaults occurred after the policemen fled into the bedroom and the accused later appeared at the window. Upon the evidence before us, this cannot be done, for it is clear from the stipulation that Slagle and Waldroup were never able effectively to cast off the restraint which the accused exer-cised over them. Only one continuous assault is shown, commencing when the accused emerged from his house with the pistol and ending when he was finally subdued. This assault forms the sole proof of the force by which accused "unlawfully apprehended" Slagle and Waldroup. United States v Posnick, supra. It is the same act alleged as violations of both Article 97 and Article 128. United States v Brown, supra. Under the circumstances, "the evidence shows that the acts 'are not separate steps in the same transaction —they merge into one step.' " United States v Rosen, supra, at page 177. Accordingly, I must disagree with the conclusion that the charges of unlawful apprehension and assault with a dangerous weapon are separate.

### III

The last issue before us is whether the allegations that accused resisted apprehension and the other offenses charged are separately punishable. As heretofore noted, accused's resistance to being taken into custody by Sergeants Slagle and Waldroup occurred within his residence. The departure of the military police from the premises in order to radio for assistance clearly establishes the separation of this transaction from the subsequent events. Hence, under the tests set forth above, the acts were separately punishable. United States v Posnick, supra; United States v Brown, supra. Accordingly, I am able to join in my brothers' holding that accused was properly charged with these offenses. Nevertheless, as I am also of the view that the accused could not have committed the offense of unlawful apprehension, and that, in any event, the charges of assault with a dangerous weapon and unlawful apprehension are not separate for sentencing purposes, I must conclude that reversal is required.

I would reverse the decision of the board of review, order the charges of unlawful apprehension dismissed, and return the record of trial to the board for reassessment of sentence.