UNITED STATES, Appellee

v

JOHN A. PICOTTE, JR., Private, U. S. Army, Appellant

12 USCMA 196, 30 CMR 196

No. 14,392

Decided February 17, 1961

*First Lieutenant Vernon C. Maulson* argued the cause for Appellant, Accused. With him on the brief was *Major Ralph W. Wofford.*

*First Lieutenant Jerome Nelson* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy* and *Captain William A. Zeigler.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Despite his pleas of not guilty, the accused was convicted of escape from confinement, the larcenies of mor-

196

phine, a weapon of a value in excess of $50.00, and an automobile; robbery; wrongful use of habit-forming drugs; and kidnaping; contrary to Articles 95, 121, 122, and 134, Uniform Code of Military Justice, 10 USC §§ 895, 921, 922, and 934, respectively. He was sentenced to a dishonorable discharge, total forfeitures, reduction to the lowest enlisted grade, and confinement at hard labor for twenty years. The convening authority reduced the term of imprisonment to fifteen years but otherwise approved the proceedings. A board of review in the office of The Judge Advocate General of the Army further lessened the period of confinement to eight years but affirmed the findings and other portions of the sentence. Thereafter accused petitioned this Court, alleging eight assignments of error. We concluded only one involving the kidnaping charge had merit and therefore limited the briefs and arguments to that issue.

There is little, if any, dispute in the facts and circumstances surrounding the offense in issue, and they show a classic case of kidnaping by force and violence. Narrated generally, they establish beyond a reasonable doubt that the accused was a prisoner in the Post Stockade, Fort Carson, Colorado, awaiting trial for the alleged commission of the crimes of larceny and wrongful use of morphine. On the day in question, he was a member of a work detail along with two other prisoners. At approximately 3:00 o'clock in the afternoon, the prisoners were allowed a short rest period at a place in the rear of a cold storage plant. There was a convertible automobile parked nearby, and the owner of the vehicle had not removed the keys from the ignition lock. The accused moved around to one side of this car and commented that he saw a cigarette therein which he wanted to obtain. The guard in charge of the detail notified him not to open the door and while the guard's attention was focused momentarily on the accused, one of the other prisoners assaulted him from the rear. A struggle ensued, and the prisoners obtained the shotgun with which the guard was armed. The victim was manhandled, gagged as he attempted to call for help, and forced into the back of the car, face down on the rear floorboard. As the automobile approached the post gate, he was informed that a knife had been found and if he attempted to disclose his presence in the car, the weapon would be used. When the car had safely cleared the post, the guard was relieved of the money in his wallet and his watch. After approximately one hour of driving, engine trouble developed and the car stopped. The victim was ordered to leave the vehicle and, as he was pulled out, he stumbled and fell to the ground. There was some discussion as to whether he should be shot but, fortunately for all, the escapees abandoned that course of action and tied him up by hands and feet. His boots were taken, and the offenders continued on their way on foot. Subsequently, the guard freed himself and the escaped prisoners were apprehended near Pueblo, Colorado.

The issue with which we are concerned is whether the crime of kidnaping was submitted properly to the court-martial. The Government's theory, which the law officer adopted at trial, is that the offense is proscribed by the subsection of Article 134 of the Uniform Code of Military Justice which makes crimes and offenses not capital punishable by military courts. To the contrary, the defense contends that Article 97 of the Code, 10 USC § 897, is the controlling statute. We are thus faced with an issue which has two facets, first, was the theory of the prosecution legally correct and, if so, did the maximum sentence provided in the state statute or the Table of Maximum Punishments for Article 97 control?

Title 18, United States Code, section 13, which is commonly referred to as the Assimilative Crimes Act, provides:

"Laws of States adopted for areas within Federal jurisdiction.

"Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in

**197**

section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment."

This offense commenced on United States property in the State of Colorado. Accordingly, we look to the statutes of that State and find that the crime of kidnaping has been defined as follows:

"A person shall be guilty of kidnaping who willfully:

(1) Abducts, steals away or secretes any man, woman or child, forcibly or otherwise; or

(2) Without lawful authority seizes, confines, imprisons, keeps or detains another against his will, forcibly or otherwise, within the state or to be sent out of the state; or . . ." [Colorado Revised Statutes, 1953, § 40-2-44.]

Obviously, the criminal conduct of the accused is prohibited by the above-quoted state law, but that is only the beginning of our inquiry for it is necessary that we find military courts have jurisdiction to prosecute crimes defined by state statutes. Pretermitting for the moment the exception which is mentioned in the Assimilative Crimes Act, we encounter no difficulty in concluding that the Colorado statute can be the base for military prosecutions. Article 134 of the Uniform Code of Military Justice has been construed by us to mean that crimes and offenses not capital denounced by Federal statutes may be tried properly as offenses under the Article. See United States v Long, 2 USCMA 60, 6 CMR 60; United States v French, 10 USCMA 171, 27 CMR 245. The Assimilative Crimes Act makes the violation of a state law a Federal offense and we have in this case a Federal offense triable under the aforementioned

clause unless Congress, by enacting Article 97 of the Code, defined and made punishable the precise acts upon which this conviction depends. Absent that situation, the prosecution proceeded on a proper theory for when Congress has created two Federal crimes, the Government may elect to prosecute on either. In Rosenberg v United States, 346 US 273, 294, 97 L ed 1607, 73 S Ct 1152 (1953), the United States Supreme Court stated, "Where Congress by more than one statute proscribes a private course of conduct, the Government may choose to invoke either applicable law."

Obviously, the defense takes the position that Article 97 of the Code, supra, which provides:

"Any person subject to this chapter who, except as provided by law, apprehends, arrests, or confines any person shall be punished as a court-martial may direct."

defines kidnaping and, by virtue of that enactment, Congress pre-empted the field for military law purposes. Therefore, argues the defense, the Assimilative Crimes Act cannot be used to support the prosecution. However, we are convinced that the doctrine of pre-emption is not involved in the instant case because Congress has not made the precise criminal conduct of the accused punishable by Article 97 or any other specific article as distinguished from the general Article of the Code.

We have set out the Colorado statute on kidnaping and, for comparative purposes, we state generally the terms of the Federal statute making kidnaping an offense when transportation across state lines is involved. We quote from Title 18, United States Code, § 1201:

"(a) Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall be punished (1) by death if the kidnaped

person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed."

Kidnaping at common law was the forceful abduction or stealing and carrying away of a person from his own country to another. Webster's New International Dictionary, Second Edition, defines the word to mean "to carry (any one) away by unlawful force or by fraud, and against his will." In all these definitions we are impressed with the descriptive words which suggest a heinous offense often committed by acts involving willfulness, seizure, movement, force, and violence.

When Article 97 of the Uniform Code of Military Justice, supra, is considered, the phraseology suggests an entirely different and less serious crime. The Article is captioned "Unlawful detention." It speaks of apprehending, arresting, or confining. It states nothing about kidnaping, abduction, force, carrying away, or movement. It seems to define a crime which is the antithesis of the offenses defined in the kidnaping statutes as it emphasizes detention and restraint. Apprehension, arrest, and confinement are well-understood terms, and their use does not indicate a Congressional intent to deal with an offense which is condemned by all society and may carry a death penalty under other Federal law. Surely, had the more serious offense been considered, words with a common denominator other than mere detention would have been included in the body of the Article. Furthermore, the words "except as provided by law" have some purpose in the Article. The Code gives certain persons the right to apprehend, arrest, or confine, and so that reservation was included. But it would be absurd to suggest that kidnaping might be legalized by statute. When considered objectively, the whole tenor of Article 97 indicates that Congress was defining the less

serious civilian offenses of false arrest or false imprisonment. True it is that under certain facts and circumstances, a crime denounced by the Article might be found to be a lesser included offense of kidnaping, but in no sense can a punitive Article prohibiting a lesser offense be considered as pre-empting the field of the greater. It is hornbook law that assault is an included offense of assault with intent to commit rape, but from that holding it cannot be reasoned that Article 128 of the Uniform Code, 10 USC § 928, defining assault, pre-empts the field of aggravated assault. Neither could one contend reasonably that the same Article pre-empted the field of assault with intent to murder merely because the former under certain facts and circumstances might be a lesser included offense of the latter.

It has been suggested that in United States v Hardy, 11 USCMA 487, 29 CMR 303, we held that Article 97 of the Code was a kidnaping statute. We have searched this decision from beginning to end and are unable to find the word kidnaping or any other word or phrase from which it could be concluded we were merging that crime with the substantive offense prohibited by that Article. All that concerned us in that instance was whether the Article applied equally to all persons in the service or whether Congress intended it to apply only to crime enforcement officers who had the apparent authority to apprehend, detain, or confine members of the armed forces. A majority of the Court held that the wording of the statute compelled an interpretation that it applied to any person subject to the Code. The dissenting Judge held to the contrary, but neither opinion expresses the concept that the wording of the Article brought the crime of kidnaping within its sweep. We, therefore, find no merit in this contention.

Our attention has been called to Williams v United States, 327 US 711, 90 L ed 962, 66 S Ct 778 (1946), which supports the conclusion we reach. There the prosecution was under an Arizona statute which de-

fined statutory rape as carnal knowledge of a female under the age of eighteen years. A Federal statute had been enacted by Congress setting the age of consent at sixteen years, and the evidence disclosed that the female involved was older than the latter but younger than the former. The Supreme Court held prosecution could not be bottomed on the Assimilative Crimes Act because the defendant was a married man and the precise acts upon which the conviction depended had been made penal by the laws of Congress defining adultery. Obviously, our holding would be different if Congress had enacted a punitive Article which brought within its folds the kidnaping of a person by means of force and violence.

The second subdivision of the issue requires that we determine the maximum sentence imposable █ for this offense. The law officer used the maximum set out in the Colorado statute, and we think he did so rightly. It would indeed be contrary to all present-day thinking to believe that the maximum sentence of confinement imposable for a forcible kidnaping would be three years. However, if that was the only reason arguing in favor of the higher maximum, the foundation for our conclusion would indeed be weak for the President could by Executive Order increase the penalty. But, having concluded that the Colorado statute governs the substantive offense and that it defines a crime different from the one set out in Article 97 of the Code, we look to the Manual for Courts-Martial, United States, 1951, for guidance. Paragraph 127c, at page 214, provides as follows:

"The punishment stated opposite each offense listed in the Table of Maximum Punishments is hereby prescribed as the maximum punishment for that offense, and for any lesser included offense if the latter is not listed, and for any offense closely related to either if not listed. If an offense not listed in the table is included in an offense which is listed and is also closely related to some other listed offense, the lesser punishment prescribed for either the included or closely related offense will prevail as the maximum limit of punishment.

"Offenses not listed in the table, and not included within an offense listed, or not closely related to either, remain punishable as authorized by the United States Code (see, generally, Title 18) or the Code of the District of Columbia, whichever prescribed punishment is the lesser, or as authorized by the custom of the service. With respect to other matters which properly may be considered in fixing punishment, see 76a, 123, and 154a."

Following the principles outlined in the above provision, if kidnaping is not proscribed by Article 97 or closely related to the offense therein defined, there is no punishment stated in the Table of Maximum Punishments. We have in our previous discussion held a complete dissimilarity between kidnaping and any listed offense, and the next alternative requires that we look to the District of Columbia Code and the United States Code. See United States v Cramer, 8 USCMA 221, 24 CMR 31. When we do that, we find that Title 22 of the District of Columbia Code, § 22–2101, if applicable, would permit life imprisonment. Section 40–2–45 of the Colorado Revised Statutes, 1953, fixed the imposable term of confinement for this offense at thirty years—the period used by the law officer—and Title 18, United States Code, section 13, not only assimilated the substantive offense but also the punishment provided therefor. It necesarily follows that Congress has provided for the punishment which may be imposed for this offense. The Code and Table of Maximum Punishments in no way limit the imposition of that period of confinement and we, therefore, conclude the law officer used the proper yardstick when he relied on the penalty stated in the Colorado law.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

200

FERGUSON, Judge (concurring in the result):

I concur in the result.

In United States v Hardy, 11 USCMA 487, 29 CMR 303, I expressed the view that Uniform Code of Military Justice, Article 97, 10 USC § 897, was "intended . . . to provide for the punishment of those officers and other individuals who use their Code-conferred powers of arrest, apprehension, and confinement arbitrarily to harass personnel subject to their control." United States v Hardy, supra, at page 494. Thus, I am able to join with Judge Latimer in his ultimate conclusion that the mentioned Code section in no way pre-empts the use of Code, supra, Article 134, 10 USC § 934, and the Assimilative Crimes Act, 18 USC § 13, to punish the crime of kidnaping in violation of a state statute thereby adopted as a part of the Federal law. For the same reason, I agree that the punishment which must govern accused's penalty is not that prescribed in the Table of Maximum Punishments, paragraph 127c, Manual for Courts-Martial, United States, 1951, for the abuse by military law enforcement personnel of their authority, but that specifically set forth in the Colorado enactment and assimilated by 18 USC § 13, supra.

I desire, however, to dissociate myself from that portion of the principal opinion which generally discusses the doctrine of pre-emption. My views on that subject were set forth at length in United States v McCormick, 12 USCMA 26, 30 CMR 26, and I am of the opinion that the Assimilative Crimes Act, supra, may not be used under the noncapital provisions of Code, supra, Article 134, to enlarge the calendar of military offenses when similar misconduct is punished under specific punitive Articles. That same conclusion was reached by the Supreme Court in Williams v United States, 327 US 711, 90 L ed 962, 66 S Ct 778 (1946). There, the Government sought to invoke, under the terms of 18 USC § 13, supra, the provisions of an Arizona statute which defined rape to include sexual connec-

tion with any female under the age of eighteen years. A specific Federal enactment made such conduct with an Indian girl criminal if she were less than sixteen years old. Other Federal statutes expressly punished the crimes of rape, assault with intent to commit rape, carnal knowledge, adultery, and fornication. The prosecutrix was an Indian. In reversing the defendant's conviction, Mr. Justice Burton stated, at page 717:

"We hold that the Assimilative Crimes Act does not make the Arizona statute applicable in the present case because (1) the precise acts upon which the conviction depends have been made penal by the laws of Congress defining adultery and (2) the offense known to Arizona as that of 'statutory rape' has been defined and prohibited by the Federal Criminal Code, and is not to be redefined and enlarged by application to it of the Assimilative Crimes Act. The fact that the definition of this offense as enacted by Congress results in a narrower scope for the offense than that given to it by the State, does not mean that the Congressional definition must give way to the State definition. This is especially clear in the present case because the specified acts which would come within the additional scope given to the offense by the State through its postponement of the age of consent of the victim from 16 to 18 years of age, are completely covered by the federal crimes of adultery or fornication. The interesting legislative history of the Assimilative Crimes Act discloses nothing to indicate that, after Congress has once defined a penal offense, it has authorized such definition to be enlarged by the application to it of a state's definition of it. It has not even been suggested that a conflicting state definition could give a narrower scope to the offense than that given to it by Congress. We believe that, similarly, a conflicting state definition does not enlarge the scope of the offense defined by Congress. *The Assimilative Crimes Act has a natural place to fill through its supplementation of the Federal Criminal Code, without giving it the added*

**201**

*effect of modifying or repealing existing provisions of the Federal Code."* [Emphasis supplied.]

In like manner, I do not believe that the Assimilative Crimes Act may be given "the added effect of modifying or repealing existing provisions" of the Uniform Code of Military Justice. However, as noted before, while Judge Latimer and I follow different paths, we ultimately arrive at the same goal. Thus, I am able to agree with him that the Assimilative Crimes Act was properly invoked here to punish the crime of kidnaping in violation of the pertinent Colorado statute. Accordingly, I join with him in affirming the decision of the board of review.