*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

**UNITED STATES**
Appellee

**v.**

**Jorge F. ACEVEDO, Staff Sergeant**
United States Army, Appellant

**No. 17-0224**

Crim. App. No. 20150076

Argued November 28, 2017—Decided February 6, 2018

Military Judge: Samuel A. Schubert

For Appellant: *Captain Joshua B. Fix* (argued); *Lieutenant Colonel Christopher D. Carrier*, *Lieutenant Colonel Melissa R. Covolesky,* and *Captain Katherine L. DePaul* (on brief); *Captain Bryan A. Osterhage.*

For Appellee: *Captain Sandra L. Ahinga* (argued); *Colonel Mark H. Sydenham*, *Lieutenant Colonel A. G. Courie III*, *Major Melissa Dasgupta Smith*, and *Captain Jennifer A. Donahue* (on brief); *Major Virginia H. Tinsley* and *Captain Austin L. Fenwick.*

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY, Judge OHLSON, and Senior Judge EFFRON, joined. Judge RYAN filed a separate dissenting opinion.

_____

Judge SPARKS delivered the opinion of the Court.

Contrary to his plea at a general court-martial, Appellant was convicted by an enlisted panel of kidnapping, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012). The panel sentenced Appellant to one year of confinement, reduction in rank to E-1, and a bad-conduct discharge. The convening authority approved the sentence, waiving the mandatory forfeitures under Article 58b, UCMJ, 10 U.S.C. § 858b, for a period of six months for the benefit of Appellant's wife. The United States Army Court of Criminal Appeals summarily affirmed the findings and sentence. Appellant then petitioned this

Court, and we granted review on four issues, but we need only address the following issue:[1]

> WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT A CHARGE OF KIDNAPPING BY INVEIGLEMENT.

We hold that the evidence was legally sufficient and therefore affirm the decision of the lower court.

## I. Background

In January 2014, nineteen-year old Private E-2 (PV2) AM completed advanced individual training and was then assigned to the Defense Language Institute in Monterey, California to learn Arabic. In March 2014, PV2 AM went to a local bar to meet her boyfriend, RM. PV2 AM consumed one or two alcoholic drinks while waiting for RM to arrive. After RM arrived, PV2 AM observed Appellant, a noncommissioned officer (NCO) in her platoon, and Sergeant (SGT) EB sitting nearby at the bar. When RM went to the bathroom, PV2 AM decided to go over and greet Appellant and SGT EB. PV2 AM testified that when RM returned and told her it was time for them to leave, Appellant became aggressive and told RM, "[y]ou're not taking my solider anywhere.... I saw her drinking, if she doesn't get in a cab and go back to base, I'm going to report her for drinking." PV2 AM testified Appellant then grabbed her arm to prevent her from leaving with RM.[2] PV2 AM started crying and indicated she wanted to leave with RM and not return to base. In an attempt to defuse the situation, RM testified he told Appellant, "I don't want her to get in trouble …. I'll take her back to base. That's fine." Appellant reacted by getting in RM's face and stating, "[t]here's no f***ing way you're taking my soldier anywhere." RM informed Appellant he did

---

[1] The other three granted issues, without briefs, asked whether a judge could simultaneously sit on a Court of Criminal Appeals and on the United States Court of Military Commissions Review. At the time of the grant, these issues had already been resolved in favor of the Government per the Court's decision in *United States v. Ortiz*, 76 M.J. 125 (C.A.A.F. 2017) (summary disposition, preceding release of opinion); 76 M.J. 189 (C.A.A.F.), cert. granted, 138 S. Ct. 54 (2017).

[2] The panel acquitted Appellant of assaulting PV2 AM by unlawfully grabbing her arm with his hand, in violation of Article 128, UCMJ, 10 U.S.C. § 928.

not want any trouble, and Appellant replied, "[w]ell then, you know, you are going to turn around and walk away and we're gonna put her in a cab." RM then left the bar alone.

Following RM's departure, PV2 AM left the bar with Appellant and SGT EB. PV2 AM testified she assumed they would get her a taxi to take her back to base. After the taxi arrived, however, Appellant unexpectedly followed behind her into the taxi, and gave the driver an address she assumed was his home address. Appellant then closed the taxi door and the driver drove away. During the taxi ride, PV2 AM testified Appellant pulled her next to him and held her hand while Appellant chatted with the driver. Appellant and PV2 AM did not speak during the five to ten-minute ride. When they arrived at Appellant's apartment, PV2 AM exited the taxi because she was "afraid that if I did something other than what I knew he wanted me to do, he [would] just go ahead and tell my command that I been drinking under age."

Outside his apartment, Appellant asked PV2 AM, "[d]o you know what's about to happen?" and she nodded and said, "[y]es." Appellant replied, "[n]o, I want you to tell me," and PV2 AM responded, "[w]e're going to f\*\*k." Appellant then asked, "[a]re you okay with this? If not, you can get back in the cab and leave." PV2 AM nodded her head in a yes motion. Appellant then asked PV2 AM to wait outside while he checked to see if his roommate was home. When Appellant returned, they entered his apartment and engaged in sexual activity.[3] In the morning, Appellant called a taxi for PV2 AM to take her back to base, gave her $20 to pay for the cab, and told her not to tell anyone what happened.

## II. Discussion

We review challenges to the legal sufficiency of the evidence de novo. *United States v. Herrmann*, 76 M.J. 304, 307 (C.A.A.F. 2017). "The standard for determining the legal sufficiency of evidence supporting a guilty verdict is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

---

[3] As to this sexual activity, Appellant was acquitted of five specifications of sexual assault and two specifications of forcible sodomy, in violation of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920, 925.

have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Mack*, 65 M.J. 108, 114 (C.A.A.F. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). In applying this test, all inferences and credibility determinations must be drawn in favor of the prosecution. *United States v. Pritchett*, 31 M.J. 213, 216 (C.M.A. 1990).

The elements of the offense of kidnapping are:

(1) That the accused seized, confined, inveigled, decoyed, or carried away a certain person;

(2) That the accused then held such person against that person's will;

(3) That the accused did so willfully and wrongfully; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*Manual for Courts-Martial, United States* pt. IV, para. 92.b. (2016 ed.) (*MCM*).

The kidnapping charge was prosecuted under the theory that Appellant willfully and wrongfully inveigled PV2 AM and held her against her will. Because Appellant contests only the first three elements to this kidnapping, we limit our legal sufficiency review to these elements. Furthermore, we need not address any event that occurred after the taxi ride in the course of our analysis of the assigned issue because the Government conceded at oral argument, and we agree, that the kidnapping was completed at the end of the taxi ride.

As to the first element, the *MCM* provides that "'[i]nveigle' means to lure, lead astray, or entice by false representations or other deceitful means. For example, a person who entices another to ride in a car with a false promise to take the person to a certain destination has inveigled the passenger into the car." *MCM* pt. IV, para. 92.c.(1). The record before us shows Appellant told PV2 AM he would report her for underage drinking unless she took a taxi back to base. However, when PV2 AM entered the taxi, Appellant followed her into the taxi and gave the driver his home address. Consequently, a rational trier of fact could

have found beyond a reasonable doubt that PV2 AM was inveigled by Appellant into entering the taxi under the false representation she was being taken to base. *See United States v. Blocker*, 32 M.J. 281, 285–86 (C.M.A. 1991) (affirming kidnapping conviction where the appellant inveigled seventeen-year-old victim to remain in car when he drove off highway and down dirt hiking path); *see also United States v. Mathai*, 34 M.J. 33, 37 (C.M.A. 1992) (affirming kidnapping conviction where NCO appellant inveigled victim into his office by stating, "[f]ollow me, Private").

As to the second element, the *MCM* provides that the term holding " '[a]gainst that person's will' means the victim was held involuntarily." *MCM* pt. IV, para. 92.c.(3). Appellant contends PV2 AM was not held against her will because she had many opportunities to leave during the taxi ride. We recognize a passenger in a taxi normally has as much control over the taxi as another passenger. However, the *MCM* explains, "[t]he involuntary nature of the detention may result from force, mental or physical coercion, or from other means, including false representations." *MCM* pt. IV, para. 92.c.(3). Furthermore, "[e]vidence of the availability or nonavailability to the victim of means of exit or escape is relevant to the voluntariness of the detention, as is evidence of threats or force, or lack thereof, by the accused to detain the victim." *Id*.

Under the unique facts of this case, a rational trier of fact could have found Appellant's previous threat of disciplinary action mentally coerced PV2 AM into staying in the taxi against her will. PV2 AM testified although she did not want to be in the taxi with Appellant, she nonetheless remained in the vehicle because she thought Appellant would report her for underage drinking if she left. PV2 AM was in a vulnerable position in the taxi having only recently entered military service, and Appellant's threat of disciplinary action could reasonably have been perceived by her as career-ending. The case for mental coercion here is particularly persuasive given the additional factor of significant rank disparity.[4] Drawing all inferences in favor of the Government, a reasonable trier of fact could have

---

[4] Appellant acknowledged their rank disparity at the bar when he told RM, "[y]ou're not taking *my soldier* anywhere." (Emphasis added.)

found beyond a reasonable doubt that Appellant held PV2 AM against her will during the taxi ride through mental coercion.

As to the third element, the *MCM* explains "[w]illfully" means Appellant must have "specifically intended" to hold PV2 AM against her will, and "[a]n accidental detention will not suffice." *MCM* pt. IV, para. 92.c.(4). Intent can be shown by circumstantial evidence. *United States v. Vela*, 71 M.J. 283, 286 (C.A.A.F. 2012).

Appellant argues only his actions, not PV2 AM's subjective feelings, are circumstantial evidence of his intent. Appellant contends that from his perspective, PV2 AM wanted to remain in the taxi after he provided the taxi driver with his address, as she declined the many opportunities she had to return to base. Here, the circumstantial evidence shows Appellant specifically intended to hold PV2 AM against her will through mental coercion. First, Appellant separated PV2 AM from her boyfriend, who was also her ride home. Second, Appellant did not ask PV2 AM if he could share the taxi with her. Third, Appellant gave the taxi driver his home address after he was previously adamant that PV2 AM needed to return to base. Fourth, during the taxi ride, Appellant pulled PV2 AM close and held her hand. Fifth, Appellant did not talk to PV2 AM during the duration of the trip. In these circumstances, a rational trier of fact could conclude beyond a reasonable doubt that Appellant willfully intended to hold PV2 AM against her will from the moment he abruptly followed her into to the taxi until the end of the taxi ride. Under the somewhat unique circumstances of this case, we conclude that the evidence is legally sufficient to find Appellant committed the offense of kidnapping.

### III. Conclusion

The decision of the United States Army Court of Criminal Appeals is affirmed.

Judge RYAN, dissenting.

Appellant abused his position of authority and likely should have been charged with the offense of maltreatment.[1] He was not. But the answer to the Government's charging oversight is not for this Court to find the evidence of *kidnapping* legally sufficient.

Kidnapping is one of the most heinous offenses known to the law. *Chatwin v. United States*, 326 U.S. 455, 462 (1946); *United States v. Picotte*, 12 C.M.A. 196, 199, 30 C.M.R. 196, 199 (1961). Kidnapping, at common law, was defined as forceful abduction and was considered a felony. *Picotte*, 12 C.M.A. at 199, 30 C.M.R. at 199. Under the Uniform Code of Military Justice (UCMJ), it is punishable by life imprisonment without possibility of parole. *Manual for Courts-Martial, United States* pt. IV, para. 92.e. (2012 ed.) (*MCM*). The Court's decision today trivializes both the fear and force attendant to this serious offense and the horror faced by true kidnapping victims. In other words, it directly disregards the Supreme Court's direction in *Chatwin*, to guard against the "careless concept of the crime of kidnapping" and recognition that such a serious offense is not intended to punish "general transgressions of morality" that do not meet the statutory elements of kidnapping. 326 U.S. at 464. I respectfully dissent.

Kidnapping by inveiglement begins at the moment when the victim is "inveigled" or deceived by the accused, *United States v. Macklin*, 671 F.2d 60, 65−66 (2d Cir. 1982), and ends when a victim is no longer deceived or being held against his or her will. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999); *United States v. Zuni*, 273 F. App'x 733, 742 (10th Cir. 2008). Even the most casual peek at the actual facts of this case reveals that it is wholly distinguishable from the usual inveiglement case, where a vic-

---

[1] The elements of the offense of maltreatment are:

> (1) That a certain person was subject to the orders of the accused; and

> (2) That the accused was cruel toward, or oppressed, or maltreated that person.

*MCM* pt. IV, para. 17.b.

tim is tricked into entering a vehicle driven by the accused or by an accomplice of the accused and solely controlled by the accused. *See, e.g., United States v. Blocker*, 32 M.J. 281, 282−83 (C.M.A. 1991) (holding the evidence was sufficient to show kidnapping by inveiglement where the appellant lured the victim into his vehicle by telling her that he would take her home but instead drove the car into the woods where appellant forcibly raped the victim); *see also United States v. Hoog*, 504 F.2d 45, 50−51 (8th Cir. 1974) (evidence legally sufficient to show kidnapping by inveiglement where the appellant induced the respective victims into accepting a ride in his truck by false pretenses and to stay in the vehicle during its "roundabout course into Kansas" against their own will).

" 'Against that person's will' means that the victim was held involuntarily." *MCM* pt. IV, para. 92.c.(3). And herein lies my primary disagreement with the majority. Involuntariness is the fundamental essence of the crime of kidnapping. *Chatwin*, 326 U.S. at 464. The involuntary nature of the detention may result from either physical or non-physical restraint, i.e., "force, mental or physical coercion, or from other means including, false representations." *MCM* pt. IV, para. 92.c.(3); *see also Chatwin*, 326 U.S. at 460 ("[t]he act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent so to confine the victim"). Notably, "[e]vidence of the availability or nonavailability to the victim of means of exit or escape is relevant to the voluntariness of the detention, as is evidence of threats or force, or lack thereof, by the accused to detain the victim." *MCM* pt. IV, para. 92.c.(3).

Here, there is zero evidence that PV2 AM was held against her will. Rather, Appellant and PV2 AM were in a taxi, a commercial vehicle *for hire* being driven by a third-party with no ties to either PV2 AM or Appellant. As recognized by the President's definition of "[a]gainst the will," the availability of an exit or escape is relevant to the voluntariness of the detention. PV2 AM, a passenger in a taxi, was able to indicate to the taxi driver that she wanted to be taken somewhere else, i.e., "availability [of an] exit." In-

deed, PV2 AM testified at trial that she heard Appellant give his own address to the cab driver and correctly interpreted it as *his address* and not her own. PV2 AM, well aware of where the taxi was directed to go, was free to either get out of the taxi or to change the destination at any point during the taxi ride. *See Macklin*, 671 F.2d at 66−67 (concluding that even if there was legally sufficient evidence of inveiglement, that there was no evidence whatsoever that the two children were "held" against their will when they were "free to come and go as they pleased, to speak to other people, and to leave appellant at any time they wished").

In addition to no evidence that the putative "kidnapping" victim, PV2 AM, was actually unable to redirect or leave the cab, neither is there any evidence of either an actual threat of physical harm to her or fear on her part of physical harm that overbore her will, as the law requires in every other instance. *See, e.g.*, Article 120, UCMJ, 10 U.S.C. § 920 (2012); Article 122, UCMJ, 10 U.S.C. § 922 (2012); *United States v. Kaplansky*, 42 F.3d 320, 324 (6th Cir. 1994) (recognizing that "the potential for violence against the victim is an inherent aspect of the crime of kidnapping"). Rather, the "mental coercion" the majority deems legally sufficient to make her unable to redirect the cab is fear of getting in trouble for underage drinking. Yet, even that fear somehow dissipated so as to render her "unkidnapped" once she exited the cab, perhaps to explain her waiting patiently and unattended while Appellant checked to make sure "the coast was clear" so they could have sex undetected by his roommate. Why this freedom was not similarly constrained by her "fear," or concern about her career, is entirely unclear.

Whatever level of mental coercion is sufficient, the fear of getting into trouble is not sufficient "fear" to constitute mental restraint for this serious felony. In contradistinction, in *United States v. Wesson*, the court upheld a kidnapping conviction where the victim was restrained by fear. 779 F.2d 1443 (9th Cir. 1986) (per curiam). In *Wesson*, appellant, a truck driver, took a young girl on a ride in his truck and brutally beat and raped her. *Id.* at 1444. Even though there was no indication that the girl was physically

restrained in the truck, the court found that she continued on the journey despite being raped and beaten because she was terrified of the consequences if caught trying to escape. *Id.* *Wesson* is clearly distinguishable from the instant case.

While the threshold for legal sufficiency is low, it should not be so low as to conclude that someone was held against their will when they were in a commercial vehicle over which they had equal control, knew where they were actually going, had no fear of physical harm whatsoever, and then stayed overnight having sex with the putative kidnapper. Today's ruling is contrary to the precedent of the Supreme Court, the federal courts of appeals that have considered the issue, and our own Court. *Chatwin*, 326 U.S. at 462; *Zuni*, 273 F. App'x at 737−38; *Wesson*, 779 F.2d at 1443−44; *Macklin*, 671 F.2d at 66−67; *Hoog*, 504 F.2d at 50−51; *Blocker*, 32 M.J. at 282−83.

In the current climate, where it appears that neither the convening authorities nor the lower courts are immune from external pressures, *see, e.g.*, *United States v. Barry*, Dkt. No. 17-0162, Finding and Facts of Conclusion from *DuBay* Hr'g 6 (C.A.A.F. 2017) (finding "external pressures on the military justice system"); *United States v. Riesbeck*, __ M.J. __ (1, 5) (C.A.A.F. 2018); *United States v. Boyce*, 76 M.J. 242, 251 (C.A.A.F. 2017), this Court has a heightened responsibility to ensure that servicemembers receive fair and impartial justice, instead of a "rough form of justice." *United States v. Denedo*, 556 U.S. 904, 918 (2009) (Roberts, C.J., joined by Scalia, J., Thomas, J., and Alito, J., concurring in part and dissenting in part). Rather than being complicit in saving the Government from its charging oversight, and diluting the concept of "mental coercion" to the degree that the majority has done to salvage a conviction, we should do as we did in *United States v. Bright*, 66 M.J. 359 (C.A.A.F. 2008), and call this charge and specification legally insufficient, as it surely is.