UNITED STATES, Appellee

v

HAROLD E. CHARLTON, Private First Class, U. S. Marine Corps, and CRAIG C. SOKOL, Private, U. S. Marine Corps, Appellants

18 USCMA 141, 39 CMR 141

No. 21,345

March 7, 1969

*Lieutenant Allen D. Black*, JAGC, USNR, argued the cause for Appellants, Accused.

*Lieutenant Ray M. Druley*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Colonel C. R. Larouche*, USMC, and *Lieutenant H. L. Moore*, JAGC, USNR.

## Opinion of the Court

DARDEN, Judge:

The appellants pleaded guilty to kidnaping, desertion, unauthorized absence, escape from confinement, robbery, and aggravated assault. They were sentenced to dishonorable discharge, confinement at hard labor for three years, and total forfeitures. In addition, appellant Charlton was sentenced to be reduced to pay grade E–1. The sentences have been approved by the intermediate appellate authorities. The issue before the Court is whether the guilty pleas of the appellants were improvidently entered because the stipulated facts do not constitute the offense of kidnaping.

The evidence indicates that the following actions took place:

"On the evening of 27 November 1967, Corporal Warren D. CLOPPER, U. S. Marine Corps, was at the R & R Center in Danang waiting to go on R & R the next morning. While waiting there he met Private First Class Harold E. CHARLTON and Private Craig C. SOKOL, who, unknown to Corporal CLOPPER, had recently escaped from the III Marine Amphibious Force Brig. Corporal CLOPPER stated that he intended to sleep at the Air Freight Terminal, that night, and Private First Class CHARLTON and Private SOKOL said that they would probably be sleeping at the same place.

"After stopping at the MP Club for a few sodas, the three of them arrived at the Air Freight Terminal at about 2230, and Corporal CLOPPER went inside to go to sleep. On three separate occasions that night, Private First Class CHARLTON and Private SOKOL woke Corporal CLOPPER to borrow cigarettes, and the last time they woke him, at about 0430, 28 November 1967, they grabbed him and forced him outside the terminal. Private SOKOL had a .45 caliber pistol which he thrust into Corporal CLOPPER's back.

"Once outside, Private First Class CHARLTON and Private SOKOL took Corporal CLOPPER at gunpoint about 20 to 25 feet from the Terminal and demanded that he give them his money. When Corporal CLOPPER protested and tried to talk them out of it, Private First Class CHARLTON struck him on the chest and told him to shut up. When Corporal CLOPPER continued to try to talk them out of robbing him, Private SOKOL told him to shut up and hit him on the head with the .45 caliber pistol, knocking him to the ground and causing a $1\frac{1}{4}$ inch laceration on the head, which required five stitches to close.

"At this point Private First Class CHARLTON and Private SOKOL tied Corporal CLOPPER'S feet with his boot laces, tied his hands behind him and stuffed an old undershirt in his mouth for a gag. They then took him 10 to 15 feet to a one foot deep cement drainage gutter outside the Terminal and dropped him in. Before dropping him in the gutter, Private First Class CHARLTON and Private SOKOL took Corporal CLOPPER's money which consisted of $385.00 in Military Payment Certificates and $2.00 in green backs. They then left Corporal CLOPPER and went in the direction of the R & R Center. They were apprehended on 1 December 1967." [Prosecution Exhibit 2.]

Neither the Uniform Code of Military Justice nor the Table of Maximum Punishments, Manual for Courts-Martial, United States, 1951, paragraph 127c, makes specific provision for the offense of kidnaping, but this Court has held that such an offense constitutes a violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, and is punishable as provided by the District

of Columbia Code, 1967 edition, Title 22, section 22–2101.

While the District of Columbia Code may not apply directly, since we look to that source for the limitation on punishment, necessarily its elements should likewise govern the nature of the offense set out under the general article. United States v Jackson, 17 USCMA 580, 38 CMR 378.

The District of Columbia Code provides:

"Whoever shall be guilty of . . . seizing, confining, inveigling, enticing, decoying, kidnaping, abducting, concealing, or carrying away any individual by any means whatsoever, and holding or detaining . . . such individual for ransom or reward or otherwise . . . shall, upon conviction thereof, be punished by imprisonment for life or for such term as the court in its discretion may determine."

This statute has never been construed by the courts of the District of Columbia. Appellants contend that the severe penalty permissible indicates the law was designed to apply to serious or substantial detentions rather than to insignificant detentions that occurred incident to other offenses and that the question really is not whether such incidental detentions come within the literal language of the statute but whether this was the kind of conduct for which Congress intended to provide a penalty of life imprisonment.

The common-law definition of kidnaping required movement from one country to another. This definition has been substantially changed by statute. In considering cases involving offenses of the kidnaping type, courts in the United States have applied the phraseology of the statute controlling in the jurisdiction of the court concerned.

The Federal Kidnaping Act, 18 USC § 1201, is inapplicable here since interstate movement is a jurisdictional requirement for it, nor are we concerned with a violation of state law made a Federal offense by virtue of the Federal Assimilative Crimes Act, 18 USC § 13.

Cf. United States v Picotte, 12 USCMA 196, 30 CMR 196.

Analysis of the kidnaping statutes and case law of the several states shows that New York represents a minority of states in holding that brief detentions or short movements "which are incidents to other crimes and have long been treated as integral parts of other crimes" do not constitute kidnaping "even though kidnapping might sometimes be spelled out literally from the statutory words." People v Levy, 15 NY2d 159, 164, 204 NE2d 842, 256 NYS 2d 793 (1965); Commonwealth v Campbell, 352 Mass 387, 226 NE2d 211 (1967); Macomber v State, 137 Neb 882, 291 NW 674 (1940).

To the contrary, "[u]nder most statutes it is the fact, not the distance, of forcible removal of the victim that constitutes kidnapping," and "[g]enerally, the kidnapping statutes fix no requirement of intent on the part of the perpetrator to hold the kidnapped person for any particular length of time." 1 Am Jur 2d, Abduction and Kidnapping, § 18, page 172.

Some commentators have urged that the New York law, as it was interpreted in the *Levy* decision, forms the desirable definition of kidnaping. See Notes, "A Rationale of the Law of Kidnapping," 53 Columbia Law Review 540 (1953); Comments, "Room-to-Room Movement: A Risk Rationale for Aggravated Kidnaping," 11 Stanford Law Review 554 (1959). The following quotation summarizes the conclusion of one such writer:

"A salient consideration is that virtually all conduct within the scope of kidnapping law is punishable under some other criminal provision: e.g., extortion, homicide, assault, rape, robbery, statutory rape, contributing to the delinquency of a minor, sex perversion and compulsory prostitution. Consequently, the practical effect of kidnapping law is to permit the imposition of additional sanctions when one of these other crimes is accompanied by a detention and asportation. Kidnapping law, therefore, is defensible only if an asportation or detention significantly increases the

dangerousness or undesirability of the defendant's behavior." [53 Columbia Law Review, supra, at page 556.]

After analyzing other types of kidnaping, this article continues:

"Of the present law of kidnapping, only kidnapping-for-ransom proscribes conduct which, according to these criteria, is invariably of a highly dangerous order. In ransom kidnappings the means by which the victim is subjugated must almost inevitably be forcible; the victim must be subdued for a period of time sufficient to allow the defendant to demand and secure the ransom, and the accomplishment of the defendant's purpose involves at least a threat to harm or kill the captive. Moreover, since kidnappings-for-ransom follow a stereotyped and, even more important, distinctive pattern, there is little possibility that the sanctions for this crime, understandably high in view of its dangerousness, will be extended to conduct of a less undesirable character.

"With this exception, kidnapping as a separate offense ought to be eliminated, and the behavior now punished as kidnapping assimilated into other categories of the criminal law." [53 Columbia Law Review, supra, at pages 557–558.]

This is an appealing argument but obviously it is one for consideration by legislative bodies instead of courts.

The District of Columbia Code provision on kidnaping has been amended twice. The 1933 amendment extended the coverage of the law to include cases where a person is not taken out of the District and then increased the maximum punishment from confinement of one to seven years and a fine of $1,000-.00 to life imprisonment. A 1965 amendment to the District of Columbia Code provision broadened its coverage by striking the words, " 'for ransom or reward,' " inserting in their place the words, " 'for ransom or reward *or otherwise,* except in the case of a minor, by a parent thereof,' " (Emphasis supplied.)

144

In construing the District of Columbia Code provision on kidnaping, we think it is significant that Congress omitted any qualification as to time or distance. The statute does not specify the distance a person must be moved or the length of time that he must be held for him to have been kidnaped. In this case, the victim clearly was "seized," "carried away," "held," and "detained." Under the statute, such transgressions must be for " 'ransom or reward *or otherwise,*' " that is, for any other reason. (Emphasis supplied.) In this instance, the reason for the seizing and carrying away conceivably was to avoid apprehension and to facilitate the flight of the accused from authority. We think the conduct of the accused comes within the literal language of the applicable statute and we are unable to conclude their conduct did not constitute kidnaping.

State court decisions, other than those referred to above, seem to support the position that it is the fact, not the distance, of forcible removal that constitutes kidnaping. In State v Morris, — Minn —, 160 NW2d 715 (1968), the Supreme Court of Minnesota held that removal of complainant a distance of only one hundred or one hundred and fifty feet and detention for five minutes constituted kidnaping although arising out of some behavioral incidents that constituted the basis of a charge for indecent assault. In that opinion, the Minnesota court commented:

"Other courts which have dealt with the problem have come to the conclusion we here reach. In State v Jacobs, 93 Ariz 336, 380 P2d 998, a rape victim was restrained for a half or three-quarters of an hour and forcibly removed from one area of a trailer house to another. The court there held that this activity was sufficient to satisfy the requirements of a statute akin to ours. California has reached the same result in a long series of decisions beginning with People v Chessman, 38 Cal 2d 166, 192, 238 P2d 1001, 1017. The court held in Chessman that the fact the victim was forced to move only 22 feet didn't make her abduction any

the less kidnapping. 'It is the fact, not the distance, of forcible removal which constitutes kidnaping in this state.' To the same effect were People v Wein, 50 Cal 2d 383, 399, 326 P2d 457, 466, and People v Monk, 56 Cal 2d 288, 295, 14 Cal Rptr 633, 636, 363 P2d 865, 868.

"After an exhaustive discussion of the history of abduction and kidnapping from their origins, the New Jersey court has held that they are separate crimes which merely overlap. State v Johnson, 67 NJ Super 414, 422, 170 A2d 830, 835. That court, however, admonished prosecutors against invoking kidnapping statutes unless the facts warrant the severe punishment involved in a conviction for that crime.

"Defendant here was sentenced to 20 years, for the kidnapping only and not for the indecent assault, pursuant to Minn St 609.035, which permits punishment for the most serious crime resulting from one behavioral incident. While we share the New Jersey court's concern lest the punishment provided by statute may be imposed in cases where the circumstances do not warrant it, we cannot say as a matter of law that the legislature did not intend the limited confinement and restraint which occurred in this case to constitute the crime of kidnapping. If under some circumstances the statutory penalty is unduly harsh, it is the duty of the prosecutor, the court, and the correctional authorities to modify the charge, the sentence, or the period of confinement so that it will be commensurate with the gravity of the crime and the harm or potential harm which is inflicted by the defendant." [Id., at page 718.]

The appellants contend that the proper language for a kidnaping statute is contained in the American Law Institute's Model Penal Code, section 212.1 (Proposed Official Draft, May 4, 1962), which defines kidnaping in the following language:

"A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with . . . the following purposes:

. . . . . .

(b) to facilitate commission of any felony or flight thereafter."

The Proposed Official Draft of this Code has been in existence since 1962. So far Congress has not adopted it for the District of Columbia although, as noted above, the pertinent kidnaping provision was amended in 1965.

We think that the conduct of the appellants falls within the literal language of the District of Columbia statute and that Congress selected the language it intends to apply. A plain and unambiguous statute is to be applied, not interpreted. United States v Davis, 12 USCMA 576, 31 CMR 162. In summary, a penal statute is not to be so strictly construed as to defeat the intent of the legislature. United States v Rowe, 13 USCMA 302, 32 CMR 302.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I do not agree, as the majority infer, that the statute in this case (District of Columbia Code, 1967 edition, Title 22, section 22–2101) is so "plain and unambiguous" that it "is to be applied, not interpreted." In that regard, I find it significant that "[t]his statute has never been construed by the courts of the District of Columbia."

The defendants in this case each pleaded guilty to charges of desertion, absence without leave, escape from confinement, robbery, assault with a means likely to produce grievous bodily harm, and kidnaping, in violation of the Uniform Code of Military Justice, Articles 85, 86, 95, 122, 128, and 134, 10 USC §§ 885, 886, 895, 922, 928, and 934, respectively. They were sentenced to dishonorable discharge, forfeiture of all pay and allowances, and to be confined

at hard labor for three years. We granted review on the contention of the appellants that their pleas of guilty were improvidently entered in that the stipulated facts do not make out the offense of kidnaping.

According to the stipulation, the two accused and Corporal Clopper met at the R & R Center at Da Nang, Vietnam. After socializing together, Clopper went inside the Air Freight Terminal to sleep. Thereafter,

". . . at about 0430, 28 November 1967, they grabbed him and forced him outside the terminal. Private SOKOL had a .45 caliber pistol which he thrust into Corporal CLOPPER'S back.

"Once outside, Private First Class CHARLTON and Private SOKOL took Corporal CLOPPER at gunpoint about 20 to 25 feet from the Terminal and demanded that he give them his money. When Corporal CLOPPER protested and tried to talk them out of it, Private First Class CHARLTON struck him on the chest and told him to shut up. When Corporal CLOPPER continued to try to talk them out of robbing him, Private SOKOL told him to shut up and hit him on the head with the .45 caliber pistol, knocking him to the ground and causing a 1¼ inch laceration on the head, which required five stitches to close.

"At this point Private First Class CHARLTON and Private SOKOL tied Corporal CLOPPER's feet with his boot laces, tied his hands behind him and stuffed an old undershirt in his mouth for a gag. They then took him 10 to 15 feet to a one foot deep cement drainage gutter outside the Terminal and dropped him in. Before dropping him in the gutter, Private First Class CHARLTON and Private SOKOL took Corporal CLOPPER's money which consisted of $385.00 in Military Payment Certificates and $2.00 in green backs. They then left Corporal CLOPPER and went in the direction of the R & R Center. They were apprehended on 1 December 1967." [Prosecution Exhibit 2.]

When Congress enacted the Uniform Code of Military Justice it did not include therein a specific proscription against the crime of kidnaping. Nor did the President in prescribing the Manual for Courts-Martial, United States, 1951, denominate such an offense as one to be punished under Article 134 of the Code, the general article, which makes punishable "all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital."

We initially faced the question of this omission in United States v Picotte, 12 USCMA 196, 30 CMR 196. There we held that the crime of kidnaping was punishable, in that case, under Article 134, by reason of Title 18, United States Code, section 13, commonly referred to as the Assimilative Crimes Act. See also United States v Wright, 12 USCMA 202, 30 CMR 202, and United States v Harkcom, 12 USCMA 257, 30 CMR 257. In such circumstances, the applicable state law and penalty becomes the Federal law and penalty for purposes of adjudication of the case then under consideration. United States v Rowe, 13 USCMA 302, 32 CMR 302. Not until United States v Jackson, 17 USCMA 580, 38 CMR 378, were we called upon to consider a conviction for kidnaping under the general article, where neither the Assimilative Crimes Act, nor the Federal or District of Columbia laws were directly applicable, the offense having occurred outside the jurisdiction of the United States.

In *Jackson*, supra, the evidence reflected that the accused and two companions left their camp without authority and proceeded to a nearby village. There, at rifle and bayonet point, they forced three male villagers to accompany them in search of female companionship. Failing in their purpose, Jackson and one of his companions decided to leave and forced the villagers to guide them to their camp. Rather than risk being shot while attempting to cross the camp perimeter in the dark, they tied up the Vietnamese and, using one of them as a pillow, went to sleep. Awakening at dawn, they untied and

released the Vietnamese and entered the camp. The question at trial was the applicable law and punishment governing this offense. The law officer excluded from his consideration, as inapplicable, because of the situs of the offense, both the Federal and District of Columbia laws, each of which allows, as a maximum, life imprisonment to be imposed for violation of either statute. Instead, he declared that, in his opinion, the punishment was limited by the court-martial sentence power under Article 134 of the Code (which provides for punishment "at the discretion of such court"), and this authorized confinement at hard labor for life.

In *Jackson*, supra, we held that while the law officer was correct in his determination that a life penalty was imposable under Article 134, subject to the limitations of Articles 18[1] and 55[2] of the Code, supra, 10 USC §§ 818 and 855, and the customs of the service (paragraph 127c, Manual, supra), the gravamen of the offense committed by the accused being essentially the same as the offense of kidnaping proscribed in the United States Code and the District of Columbia Code, he erred in excluding these laws from consideration as " 'an appropriate frame of reference . . . for measuring the punishment.' United States v Blevens . . . [5 USCMA 480, 18 CMR 104], at page 492." United States v Jackson, supra, at pages 583 and 584.

The alleged offense in the case at bar also occurred in Vietnam. As the majority read the stipulation, the victim was " 'seized,' " " 'carried away,' " " 'held,' " and " 'detained,' " conceivably for the purpose of avoiding apprehen-sion and to facilitate the flight of the accused from authority. From this they conclude that the conduct of the accused comes within the literal language of the District of Columbia Statute.

The District of Columbia Code, 1967 edition, Title 22, section 22–2101, provides in pertinent part:

"Whoever shall be guilty of . . . seizing, confining, inveigling, enticing, decoying, kidnaping, abducting, concealing, or carrying away any individual by any means whatsoever, and holding or detaining . . . such individual for ransom or reward or otherwise . . . shall, upon conviction thereof, be punished by imprisonment for life or for such term as the court in its discretion may determine."

Prior to the 1965 amendment of this Code (Public Law 89–347, section 3, 79 Stat 1307, 89th Congress, 1st Session, November 8, 1965), kidnaping in the District of Columbia was, by statute, restricted to those cases wherein the purpose was for ransom or reward. In order to bring the existing law into closer conformity with the Federal statute, the Congress added to the purpose of the proscribed action the words "or otherwise, except, in the case of a minor, by a parent thereof." (Senate Report No. 623, page 3, and House Report No. 1129, page 2, both to accompany S. 1320, 89th Congress, 1st Session.) My brothers find it significant that Congress, in amending the District Code, did not adopt the proposed language for a kidnaping statute contained in the American Law Institute's Model

---

[1] "Art. 18. Jurisdiction of general courts-martial.

"Subject to section 817 of this title (article 17), general courts-martial have jurisdiction to try persons subject to this chapter for any offense made punishable by this chapter and may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter, including the penalty of death when specifically authorized by this chapter. General courts-martial also have jurisdiction to try any person who by the law of war is subject to trial by a military tribunal and may adjudge any punishment permitted by the law of war."

[2] "Art. 55. Cruel and unusual punishments prohibited.

"Punishment by flogging, or by branding, marking, or tattooing on the body, or any other cruel or unusual punishment, may not be adjudged by any court-martial or inflicted upon any person subject to this chapter. The use of irons, single or double, except for the purpose of safe custody, is prohibited."

Penal Code, section 212.1 (Proposed Official Draft, May 4, 1962):

"A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:

(a) to hold for ransom or reward, or as a shield or hostage; or

(b) to facilitate commission of any felony or flight thereafter; or

(c) to inflict bodily injury on or to terrorize the victim or another; or

(d) to interfere with the performance of any governmental or political function.

"Kidnapping is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place prior to trial, in which case it is a felony of the second degree. A removal or confinement is unlawful within the meaning of this Section if it is accomplished by force, threat or deception, or, in the case of a person who is under the age of 14 or incompetent, if it is accomplished without the consent of a parent, guardian or other person responsible for general supervision of his welfare."

The stated motivation behind the American Law Institute's efforts to secure the adoption of a model code for kidnaping was the existence of serious inequities among the States in the laws then in force (some provided for degrees of kidnaping—simple and aggravated—with penalties ranging from five years to life or death), and judicial interpretations thereof, especially as they pertained to situations where, as here, the kidnaping was incidental to the commission of some other offense, such as, rape, robbery, or other felony, where the penalties for these offenses are less than death or life imprisonment. The statutes of California and New York were utilized to illustrate the variety of grading arrangements. (See American Law Institute, Model Penal Code, Tentative Draft No. 11, April 27, 1960, section 212.1, page 10.) As the writers of ·the Tentative Draft stated: "Examples of abusive prosecution for kidnapping are common."[3]

I believe that the charging of kidnaping under the particular facts of this case is such an abuse. This Court, by reason of the present conviction, has been placed in a position of construing a statute which has never been interpreted by the courts of the jurisdiction in which this statute applies. Only one case is cited in the District of Columbia Code Encyclopedia, 1967 Edition, of a prosecution under section 22–2101 (Hard v Splain, 45 App DC 1 (1916)), and that involved the taking of a minor child by the father from the mother in violation of a separation agreement. The court held that this was not kidnaping within the purview of the statute.

In view of the unquestioned opportunity in the District of Columbia to allege kidnaping under circumstances similar to those which pertain here, and considering the propensity of prosecutors to charge as many offenses as the transaction is capable of supporting, I am constrained to believe that the lack of cases indicates a general feeling in the legal profession that a charge of kidnaping in such a situation would not be sustainable under section 22–2101. Cf. United States v Morgan, 8 USCMA 341, 24 CMR 151.

According to the stipulation, quoted above, the victim was bound and transported to the drainage ditch during the commission of the robbery. He was not relieved of his wallet until just before being dropped into the ditch. I do not believe this makes out the offense of kidnaping. All of the acts were part of the robbery and done in pursuance thereof. By holding these facts to constitute kidnaping, with a consequent possible life penalty, we open the door to a veritable flood of similar charges. In addition, as contended by appellate

[3] See also "A Rationale of the Law of Kidnapping," 53 Columbia Law Review 540 (1953); "Room-to-Room Movement: A Risk Rationale for Aggravated Kidnapping," 11 Stanford Law Review 554 (1959).

defense counsel in their brief, "[i]t takes little imagination to see how the addition of a kidnapping charge might increase the pressure to seek a guilty plea bargain rather than risk a life sentence that might be imposed after a trial." See United States v Cummings, 17 USCMA 376, 38 CMR 174, where, at page 377, we commented on the dangers inherent in pretrial agreements.

I believe this activity, standing alone, comes within the purview of Article 97, Code, supra, 10 USC § 897, which states:

"Art. 97. Unlawful detention.

"Any person subject to this chapter who, except as provided by law, apprehends, arrests, or confines any person shall be punished as a court-martial may direct."

The Table of Maximum Punishments, paragraph 127c, Section A, Manual, supra, provides the maximum imposable punishment for this offense as dishonorable discharge, total forfeitures, and confinement at hard labor for three years.

I am not unaware that in United States v Hardy, 11 USCMA 487, 29 CMR 303, I stated, in dissent, my belief that the application of Article 97 should be limited to restraints imposed by those acting in the capacity of persons enforcing the law. See also my separate opinion in United States v Picotte, supra. The majority, in *Hardy*, however, held to the contrary in view of the language in paragraph 176, Manual, supra, which provided that the scope of the Article was not limited to law enforcement personnel but included all persons subject to the Code. *Hardy* is the law of this Court and we should follow it. My brothers, in their opinion in this case, have not mentioned *Hardy* nor the applicability of Article 97.

As suggested in *Picotte*, supra, "under certain facts and circumstances, a crime denounced by the Article [97] might be found to be a lesser included offense of kidnaping." It is my opinion that the facts and circumstances of this case could provide a proper vehicle for such a determination.

Where there is a serious misunderstanding as to the maximum imposable punishment, a guilty plea may be held improvident. United States v Hamill, 8 USCMA 464, 24 CMR 274. I would so find in this case.

Accordingly, I would reverse the decision of the board of review and direct that a rehearing be ordered.