UNITED STATES, Appellee,

v.

John M. SCHOLTEN, Private First
Class, U.S. Army, Appellant.

No. 45,218.
CM 441903.

U.S. Court of Military Appeals.

Jan. 30, 1984.

For Appellant: *Captain Richard W. Vitaris* (argued); *Major Robert C. Rhodes, Captain Warren G. Foote* (on brief); *Lieutenant Colonel William P. Heaston and Major Stephen R. Dooley.*

For Appellee: *Major Michael R. Smythers* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards* (on brief); *Captain Andrew D. Stewart.*

### Opinion of the Court

EVERETT, Chief Judge:

#### I

Appellant was tried at Mannheim, Federal Republic of Germany, by a general court-martial composed of officer members. Pursuant to his pleas, Scholten was convicted of attempted murder, robbery, sodomy, and kidnapping, in violation of Articles 80, 122, 125, and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 880, 922, 925, and 934, respectively. The court-martial sentenced him to a dishonorable discharge, confinement at hard labor for 30 years, total forfeitures, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority reduced the confinement to 23 years, but otherwise approved the findings and sentence. These results were affirmed by the Court of Military Review. 14 M.J. 939 (A.C.M.R.1982).

During the providence inquiry, the military judge stated the elements of kidnapping as follows:

> The final Charge and Specification is an allegation of kidnapping. There are five things in this case that the government would have to prove, the first being that on or about the 5th of July 1981, in Mannheim, Germany, that you unlawfully kidnapped one Mario Mudra. Secondly, that this kidnapping was against the will of Mr. Mudra. Third, that you kidnapped Mr. Mudra by taking his automobile and driving him away in it. And fourth, they would have to prove that the kidnapping was for the purpose of stealing Mr. Mudra's automobile. And finally, they would have to prove that under the circumstances, that conduct would be to the prejudice of good order and discipline in the armed forces or of such a nature as to tend to bring discredit on the armed forces. Now the term "kidnapping" as used in this particular offense, means to forcibly and unlawfully carry another person away from the place where he's at, to detain, keep or confine that person against their will.

These instructions followed precisely the elements for this offense as stated in the Military Judge's Guide. We granted review to determine whether the elements of kidnapping were properly delineated by the judge,[1] since otherwise the guilty pleas to that offense would be improvident. Now, we affirm.

#### II

Crimes and offenses not capital which are denounced by Federal penal statutes may be tried by court-martial under the third clause of Article 134, U.C.M.J., 10 U.S.C. § 934. One such penal statute is the Assimilative Crimes Act, 18 U.S.C. § 13, which

---

1. The issue itself is
   WHETHER APPELLANT'S PLEA OF GUILTY TO THE OFFENSE OF KIDNAPPING IS IMPROVIDENT SINCE THE ELEMENTS OF THE OFFENSE WERE IMPROPERLY DELINEATED DURING THE PROVIDENCE INQUIRY.

makes applicable to places "reserved or acquired for the use of the United States, and under . . . [its] exclusive or concurrent [Federal] jurisdiction," 18 U.S.C. § 7(3), the criminal laws "of the State, Territory, Possession, or District in which such place is situated." Therefore, if a servicemember on a military post within the "exclusive or concurrent jurisdiction" of the United States engages in conduct which would violate the criminal laws of the state wherein that post is located, he may be tried by court-martial for his violation of state law—as incorporated into Federal criminal law pursuant to the Assimilative Crimes Act and further incorporated into the Uniform Code by the third clause of Article 134. Thus, in *United States v. Picotte,* 12 U.S.C.M.A. 196, 30 C.M.R. 196 (1961), we held that a court-martial could properly try the accused for kidnapping a victim at Fort Carson in violation of a Colorado statute.

■ Under the third clause of Article 134, a servicemember also may be court-martialed for kidnapping in violation of 18 U.S.C. § 1201(a), which—under the title "Kidnaping"—provides:

(a) *Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when:*

(1) the person is willfully transported in interstate or foreign commerce;

(2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States;

(3) any such act against the person is done within the special aircraft jurisdiction of the United States as defined in section 101(36) of the Federal Avia-

tion Act of 1958, as amended (49 U.S.C. 1301(36)); or

(4) the person is a foreign official, an internationally protected person, or an official guest as those terms are defined in section 1116(b) of this title,

shall be punished by imprisonment for any terms of years or for life.

(Emphasis supplied).

As one Court of Appeals has observed, this section "proscribes one crime, with four jurisdictional bases, interstate or foreign commerce, maritime or territorial jurisdiction, special aircraft jurisdiction and foreign guests of the government." *United States v. Lewis,* 662 F.2d 1087, 1090 (4th Cir.1981), *cert. denied,* 455 U.S. 955, 102 S.Ct. 1464, 71 L.Ed.2d 672 (1982). Thus, under the third clause of Article 134, a court-martial may convict a servicemember of kidnapping in violation of 18 U.S.C. § 1201 if—and only if—one of the "four jurisdictional bases" for the offense has been established.

■ Like most Federal penal statutes, 18 U.S.C. § 1201(a) does not apply to offenses committed in foreign countries. *See United States v. Bowman,* 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922); para. 213e, Manual for Courts-Martial, United States, 1969 (Revised edition).[2] Thus, a kidnapping which, as in the present case, occurs in Germany cannot be prosecuted under 18 U.S.C. § 1201(a).[3]

Nonetheless, we have permitted trial by court-martial for a kidnapping overseas when the prosecution has been predicated on the first two clauses of Article 134— which prohibit, respectively, conduct "to the prejudice of good order and discipline in the armed forces" and service-discrediting conduct. *See United States v. Charlton,* 18 U.S.C.M.A. 141, 39 C.M.R. 141 (1969); *Unit-*

---

**2.** *See also* para. 213c, Manual for Courts-Martial, United States, 1951.

**3.** Primary and secondary jurisdiction over the offense was governed by the Agreement Between the Parties to the North Atlantic Treaty regarding the Status of their Forces (NATO SOFA), 4 U.S.T. 1792, T.I.A.S. No. 2846 (effective August 23, 1953), and the Agreement to

Supplement the Agreement Between the Parties to the North Atlantic Treaty regarding the Status of their Forces with respect to Foreign Forces stationed in the Federal Republic of Germany (Supplementary Agreement), 14 U.S.T. 531, T.I.A.S. No. 5351 (effective July 1, 1963).

ed States v. Jackson, 17 U.S.C.M.A. 580, 38 C.M.R. 378 (1968). In these cases, the definition used for kidnapping was not the same as that at common law—"the forceful abduction or stealing and carrying away of a person from his own country to another." *United States v. Picotte, supra* at 199, 30 C.M.R. at 199. Instead, in *United States v. Charlton, supra,* we defined the offense in terms of the provision in the District of Columbia Code that

> [w]hoever shall be guilty of . . . seizing, confining, inveigling, enticing, decoying, kidnaping, abducting, concealing, or carrying away any individual by any means whatsoever, and holding or detaining . . . such individual for ransom or reward or otherwise . . . shall upon conviction thereof, be punished by imprisonment for life or for such term as the court in its discretion may determine.

The rationale for this reference was that, "since we look to . . . [the District of Columbia Code] for the limitation on punishment, necessarily its elements should likewise govern the nature of the offense set out under the general article." *Id.* at 143, 39 C.M.R. at 143.

■ However, we now are unable to discern the necessity for this intimate relationship between defining the offense and limiting the punishment for that offense. Indeed, it seems a *non sequitur* to say that, because the President referred to the District of Columbia Code in limiting the punishment for kidnapping, this same Code must be consulted in deciding what are the elements of the offense. The President's intent is decisive in interpreting and applying the Table of Maximum Punishments, since he has been delegated by Congress the power to prescribe maximum punishments for offenses triable by court-martial. However, congressional intent is paramount in determining what acts constitute violations of the Uniform Code, and the Manual provision as to maximum punishments does not assist materially in ascertaining that intent.

Appellate defense counsel have emphasized that the President has deleted the provision of the Manual for Courts-Martial which at one time referred to the District of Columbia Code for guidance in determining the maximum punishments imposable for certain offenses tried by court-martial. *See* para. 127c, Manual, *supra* (Ch. 4).[4] Therefore, since the District of Columbia Code no longer has any relevance in determining the maximum punishment a court-martial may impose, the premise for *Charlton's* rationale has been removed, and no occasion remains to consult the District of Columbia Code in determining the elements of the offense of kidnapping.

■ Because we now are of the opinion that the District of Columbia Code never has been relevant in defining kidnapping, this Manual change seems equally irrelevant. Instead, we reason that, if conduct not specifically prohibited by the punitive articles of the Uniform Code is of such importance to federal interests as to authorize punishment when interstate or foreign commerce is involved or when the conduct occurs in a place over which the Federal Government has acquired exclusive or concurrent jurisdiction, a servicemember may be punished by a court-martial for such conduct if the trier of fact determines that it prejudices good order and discipline or is service discrediting. The prohibition of the conduct by Congress constitutes a legislative determination about its importance to the Federal Government and also gives notice to servicemembers that, if they engage therein, they risk punishment.

The acts prohibited by 18 U.S.C. § 1201(a) conform generally to those which would violate the District of Columbia Code, if they took place there. Thus, although *United States v. Charlton, supra,* referred to the District of Columbia Code— rather than to 18 U.S.C. § 1201(a)—for purposes of defining the elements of kidnapping, the practical result is the same as if the proper statute had been relied on. In

---

4. A similar provision appeared in the corresponding paragraph of the 1951 Manual for Courts-Martial.

advising appellant as to the elements of the offense of kidnapping, to which he was pleading guilty, the military judge was attempting to follow *Charlton*. In so doing, he gave advice which was correct in material particulars, even though the reasoning of the precedent on which he relied was flawed. Consequently, appellant was not misled and his pleas of guilty were provident.

To recapitulate, a servicemember may be prosecuted for kidnapping under one of these three theories: (a) violation of state law, as incorporated into Federal penal law by the Assimilative Crimes Act, 18 U.S.C. § 13, if the misdeed took place in the United States in an area within the exclusive or concurrent jurisdiction of the United States; (b) violation of 18 U.S.C. § 1201(a), if the acts occurred within the territorial jurisdiction of the United States and if one of the four statutory jurisdictional bases exists; or (c) conduct which is contrary to good order and discipline in the armed forces or is service-discrediting and which falls within the definition of the "single crime" prohibited by 18 U.S.C. § 1201(a), regardless of the presence of any of the "four jurisdictional bases" prescribed in that section. *See United States v. Lewis, supra* at 1090. Since the Government properly relied in this case on the third of these alternatives and appellant properly pleaded guilty with respect to that same alternative, the pleas of guilty were provident.

### III

The decision of the United States Army Court of Military Review is affirmed.

Judges COOK and FLETCHER concur.