UNITED STATES

v.

**Eddie W. SANTISTEVAN, Jr., 523 90 5689 Corporal (E–4), U.S. Marine Corps.**

**NMCM 84 2485.**

U.S. Navy-Marine Corps Court of Military Review.

25 March 1986.

CDR DAVID C. LARSON, JAGC, USN, Appellate Defense Counsel.

LCDR DAVID A. SABOT, JAGC, USN, Appellate Government Counsel.

VAUGHAN E. TAYLOR, Civilian Defense Counsel.

Before MITCHELL, Senior Judge, and GLADIS and CASSEL, JJ.

MITCHELL, Senior Judge:

At a contested trial, appellant was convicted by general court-martial (officer members) of forcible sodomy, aggravated assault, kidnapping and assault with intent to commit sodomy. The approved sentence extended to a dishonorable discharge, eight years confinement and accessory punishment. Appellant challenges his conviction on the grounds that mere "incidental movement" of the victim of the sodomy offense cannot be considered kidnapping; the pleading of the kidnapping offense in these circumstances constituted unreasonable and prejudicial multiplication of charges; all of the acts alleged in the charged offense were so united in time, circumstance and impulse as to constitute a single offense; the military judge erred in overruling appellant's objection to the victim's hearsay identification of her assailant made to Hospitalman Second Class Fernandez, U.S. Navy; the military judge failed to instruct the members on the offense of aggravated assault being a lesser included offense of assault with intent to commit sodomy; that appellant was denied the op-

portunity for a response to the staff judge advocate review, citing *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1 (1975); and the convening authority's action failed to credit the appellant with eighty-three days of pretrial confinement, citing *United States v. Allen*, 17 M.J. 126 (C.M.A.1984). The latter two assignments of error were rendered moot as a consequence of this Court's order of 30 November 1984, in which this case was remanded for compliance with *Goode* and, in so complying, the convening authority also resolved the *Allen* problem. Upon return of the case to this Court, the appellant moved for a *Dubay* [1] hearing into allegations of unlawful command influence. The motion was denied by this Court on 18 July 1985. The issue remains viable by way of incorporation by inference in the appellate pleadings.

Appellant and victim, one Mrs. R, met, at the appellant's overture, while at a night spot near Marine Corps Air Station, Tustin, California during the evening of 5 and 6 December 1983. Their acquaintance was furthered when appellant apologized to her for a fight in which he had engaged. The two linked up with some of Mrs. R's friends and moved their socializing to another bar. They broke up about 0130–0200. Mrs. R offered to drive appellant back to his barracks, since it was convenient to her route home. Appellant directed her to the barracks parking lot and to a relatively remote part thereof where they engaged in consensual social small talk. In time, appellant grabbed at Mrs. R and attempted to kiss and fondle her. After some struggling, during which Mrs. R sounded her car's horn, the appellant cut short the discussion by producing a knife, with which he threatened her, and forced the victim to perform oral sodomy. As he became sufficiently excited to have an erection, she, either because she was unaccustomed to the technique or because of drink, or both, vomited. Appellant then forced Mrs. R out of her car and to the front of it.

**1.** *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

He said he was going to take her to an area he pointed out to her about one hundred and forty feet from the car, an area from which they could not so easily be seen from the parking lot and roadways. At this point, Mrs. R, fearful of what might occur there, broke away and ran, screaming for help. Appellant ran after her, stabbing her on the top of the head, on the shoulders, neck and in the back, beating her to the ground. He repeatedly told her to shut up. Seeing car lights ahead, Mrs. R got up and ran toward them as the appellant broke off the attack and left. The victim was taken in an hysterical condition to the dispensary for treatment. It was there that she identified appellant as her assailant to HM2 Fernandez.

The appellant was convicted *inter alia* of kidnapping under the first two clauses of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (discipline prejudicing/service discrediting conduct). This Court is not faced with the jurisdictional issue which troubled the Court of Military Appeals in *United States v. Bartole*, 21 M.J. 234 (C.M.A.1986) and *United States v. Scholten*, 17 M.J. 171 (C.M.A. 1984), where the defendants were prosecuted under the third clause of Article 134, UCMJ (Article 134), for violations of the federal civilian kidnapping law which constituted crimes and offenses not capital under military law. *Bartole*, citing *Scholten*, makes clear that kidnapping is a military criminal offense under the first two clauses of Article 134 and that the military offense is defined both in terms of the federal kidnap statute, 18 U.S.C. § 1202[2] *et seq* and the conduct being prejudicial to good order and discipline and/or service discrediting, as specified in the military statute. *United States v. Bartole*, 21 M.J. at 235. Consequently, we need not be concerned with whether or not the Govern-

ment specifically proved that the offense occurred at a place within the special maritime and territorial jurisdiction of the United States. See 18 U.S.C. § 7. Since the instant trial occurred prior to the effective date of the *Manual for Courts-Martial, 1984* (MCM, 1984), the provisions therein relating to kidnapping are not controlling, though, given their predication on the civilian federal statute, they are helpful to analysis. *See* Chapter 4, paragraph 92 and App. 21, paragraph 92, Analysis, MCM, 1984.

The appellant argues that the acts of forcing Mrs R to exit the car, by holding onto her sweater, and then moving her to the front of the car, as he sought to move her over the crest of an embankment to a point some one hundred and forty feet from Mrs. R's car, were incidental to what the appellant views as a single continuing sodomitic attack, which began inside the car but had not been completed because appellant had not ejaculated by the time the movement took place.

 We note at the outset that there is a paucity of federal kidnapping cases involving fact situations similar to the instant case, while state cases are numerous. State cases construing state statutes in the light of their legislative histories, however, are of limited utility in construing the federal statute. In general, statutes should be given reasonable construction to promote efficient enforcement of the law. *State v. Berry*, 200 Wash. 495, 93 P.2d 782 (1939). Laws should also be construed so as not to lead to injustice, oppression or an absurd consequence. *Chatwin v. United States*, 326 U.S. 455, 464, 66 S.Ct. 233, 237, 90 L.Ed. 198, 202 (1946); *Government of Virgin Islands v. Berry*, 604 F.2d 221, 225 (3rd Cir.1979). A statute should not, however, be limited beyond its plain wording. *United States v. DeLaMotte*, 434 F.2d 289,

---

**2.** 18 U.S.C. § 1201. This statute, entitled KIDNAPPING, provides in pertinent part:
 (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when:

\* \* \* \* \* \*

(2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States.

292 (2nd Cir.1970), *cert. denied,* 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971). We also note that the traditional view of kidnapping is that any asportation, or carrying away, of the victim, no matter how short in distance or duration is sufficient to constitute the offense—that it is the fact, not the distance of movement or time of detention which makes the act criminal. *E.g. People v. Chessman,* 38 Cal.2d 166, 238 P.2d 1001 (1952). In an effort to avoid the danger that persons who commit crimes such as robbery and rape, which inherently involve some seizure or detention of the victim, could also face death or life imprisonment for kidnapping, courts and legislatures began to restrict the scope of kidnapping statutes to prevent application of the statutes to such incidental actions. *E.g. People v. Daniels,* 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969); *People v. Levy,* 15 NY.2d 159, 256 NYS.2d 793, 204 N.E.2d 842, *cert. denied,* 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965). The current generally prevailing or so-called modern view is to construe kidnapping statutes to prevent gross distortion of lesser crimes.

■ As a practical matter, the substantive military law of kidnapping is the same as the civilian federal law. *United States v. Bartole, supra; United States v. Scholten, supra; United States v. Williams,* 17 M.J. 207, 216 (C.M.A.1984). The federal statute is plainly much broader in scope than the kidnapping found in the common law and the federal courts have generally resisted attempts to narrow its scope by decision. *E.g., United States v. DeLa-*

*Motte, supra; United States v. Young,* 512 F.2d 321 (4th Cir.1975), *cert. denied,* 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976).[3] The very essence of the federal crime and its basic elements are an unlawful seizure *and* holding. 18 U.S.C. § 1201; *Chatwin v. United States, supra; United States v. Young, supra; United States v. Gawne,* 409 F.2d 1399 (9th Cir.1969), *cert. denied,* 397 U.S. 943, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970). Notwithstanding its birth in a period of rampant interstate transportation of kidnapped persons, the 1972 amendment to 18 U.S.C. § 1201,[4] which made kidnapping a federal offense not only when the victim was transported in interstate commerce but also when the offense was committed within the special maritime and territorial jurisdiction of the United States, made the thrust of the offense the kidnapping itself rather than the interstate transportation of the kidnapped person. *United States v. Lewis,* 662 F.2d 1087 (4th Cir.1981); *United States v. Young, supra.* It follows that the discussion of the thrust of the federal kidnapping offense being interstate movement of kidnapped persons found in *Chatwin* is no longer valid. The essence of federal kidnapping being unlawful seizure and holding, it matters not that the holding was for a brief time. *United States v. Lewis, supra; United States v. Young, supra.* Momentary detention in the course of committing another offense and necessary for its commission is logically not contemplated as a separate offense by the federal kidnapping statute. *See United States v. DeLaMotte,* 434 F.2d at 293. In *Lewis,* kidnap-

**3.** *United States v. Wolford,* 444 F.2d 876 (D.C. Cir.1971); *Smith v. United States,* 407 F.2d 356 (8th Cir.1969), *cert. denied,* 395 U.S. 966, 89 S.Ct. 2113, 23 L.Ed.2d 753 (1969); *DeHerrera v. United States,* 339 F.2d 587 (10th Cir.1964); *Poindexter v. United States,* 139 F.2d 158 (8th Cir.1943). At first blush, *Government of Virgin Islands v. Berry,* 604 F.2d 221 (3rd Cir.1979) appears to hold *contra. Berry,* however, was construing a Virgin Islands kidnap statute, which had no legislative history, and was not construing 18 U.S.C. § 1201, though the two statutes are superficially similar. *Government of the Virgin Islands v. Ventura,* 775 F.2d 92 (3rd Cir.1985). *Berry* set forth four fact-dependent analytical

factors for the determination of kidnapping: (1) the duration of detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense. *Berry,* 604 F.2d at 227.

**4.** P.L. 92–539, Title II § 201, 86 Stat. 1072 (1972). *See* 1972, U.S. Code Cong. and Adm. News p. 4316.

ping was affirmed in an armed robbery case where the victim was transported from the George Washington Memorial Parkway in Virginia across the Potomac River to the District of Columbia. In *Young*, the victim was robbed at his car, located at National Airport in Washington, D.C., and to facilitate the escape of his assailants, locked in the trunk of his car. As soon as the robbers left, the victim kicked out the rear seat, escaped, and reported the crimes to authorities who arrested the robbers before they could exit the airport. All occurred in a matter of a few minutes. The civilian federal courts have avoided an interpretation of Congressional intent to bring the federal law into line with the interpretation of legislative intent manifest in the state cases of *Daniels* and *Levy*, where, through broad incidental movement and merger doctrines, the state courts have sought to limit prosecutorial zeal in the form of unreasonably increasing the punishment for mere robberies, etc. by also charging an accused with kidnapping, a pleading otherwise permitted by the literal wording of kidnapping statutes. *See United States v. Young, supra.*

Kidnapping has been affirmed in a military case where the victim was forced at gunpoint from a building to a place some twenty-five feet away, bound and gagged, dragged another fifteen feet, robbed and left there. *United States v. Charlton*, 18 U.S.C.M.A. 141, 39 C.M.R. 141 (1969) [adopting the traditional view that it is the fact of seizure not the distance involved that determines kidnapping].[5] Likewise kidnapping has been upheld where the fel-

ons, intent on stealing the victim's car, drove away with the victim in it. *United States v. Scholten, supra.* These cases are consistent with *Young*. Notwithstanding the broad scope of the federal kidnapping statute, we must resolve whether the appellant's actions *in this case* constituted a momentary detention or movement in the course of an act of forcible sodomy where it is doubtful there is any legislative intention to multiply offenses, or to produce unjust and absurd results. *See United States v. DeLaMotte, supra.* For, while detentions/asportations of brief duration may in some circumstances constitute kidnapping, *e.g., United States v. Young, supra*, in others the detention may be so *de minimis* and closely related to another offense that a separate offense of kidnapping cannot lie. Common sense and reason dictate that even the broad rationales in *Charlton* and *Young* have implicit limitation, notwithstanding the suggestion that *any* involuntary detention regardless of circumstances amounts to kidnapping. We read *Charlton's* broad language regarding the character of 18 U.S.C. § 1201 as drawing a contrast between the traditional and so-called modern views of kidnapping and as not negating the *DeLaMotte* view that momentary detentions and asportations are not contemplated by the federal kidnapping statute.[6]

■ Within the statutory construction principles enunciated at the outset of this opinion, we endorse, generally the approach taken in *United States v. Berry, supra*, in sorting kidnapping from incidental/momentary detention. We think that,

---

5. *Charlton* was decided on the premise that the District of Columbia law was the source of the elements of the offense of kidnapping in that case. This aspect of *Charlton* was expressly overruled by *United States v. Scholten, supra*, where the Court of Military Appeals concluded that the proper source of law in such cases was the existing federal statute. The Court clearly implied that, since the federal kidnap statute and the District of Columbia Code provision had generally similar elements, the result in *Charlton* did not have to be disturbed. *United States v. Scholten*, 17 M.J. at 174. The observation by the Court of Military Appeals of the sameness of 18 U.S.C. § 1201 and the District of Columbia

kidnap law is correct. *See United States v. Wolford*, 444 F.2d 876 (D.C.Cir.1971).

6. Paragraph 92c(2), Part IV, MCM, 1984 uses the term "substantial" distance in connection with asportation in kidnapping offenses. This discussion is predicated on *United States v. DeLaMotte, supra.* App. 21 Paragraph 92, at A21–102, MCM, 1984. No such language is found in *DeLaMotte* other than the reference to momentary detention discussed *infra*. *See United States v. DeLaMotte*, 434 F.2d at 292–293. Consequently, we view MCM, 1984 to be in accord with and not more strict than *DeLaMotte*.

in law, the criminal takes his victim where the victim is located and should not be given license or reward by recognition of a right in the criminal to move or detain the victim so as to enhance the successful commission of the intended offense or to make escape more likely or to do anything else. In so moving or detaining the victim for such purposes, we think it is appropriate that the criminal run the risk of punishment under the applicable kidnap statute. This principle, implicit in *Young*, mandates some alteration in the analytical scheme set forth in *Berry*. Whether or not an act constitutes kidnapping in situations during which a separate offense is committed turns on the balancing of the factors discussed below.

a. The occurrence of an unlawful seizure, confinement, inveigling, decoying, kidnapping, abduction or carrying away *and* a holding for a period. Both elements must be present.

b. The duration thereof. Is it appreciable or *de minimis?* This determination is relative and turns on the established facts.

c. Whether these actions occurred during the commission of a separate offense.

d. The character of the separate offense in terms of whether the detention/asportation is inherent in the commission of that kind of offense, at the place where the victim is first encountered, without regard to the particular plan devised by the criminal to commit it. This factor is objective and affords due consideration of the policy against giving the criminal a license for success by not turning the analysis on the criminal's particular scheme. For example, a street robbery is normally committed by accosting the victim on the street, detaining him, perhaps altering his facing, taking his property and then escaping. If the robber, in fact, dragged his victim into an alley some distance away to avoid detection, and facilitate escape, or for some other reason, kidnapping is established. If the law were to put its analysis in the context of the criminal's plan, the permissible limits on movement/detention become the limits of the imagination of the robber. *See, United States v. Young, supra; United States v. DeLaMotte, supra.*

e. Whether the asportation/detention exceeded that inherent in the separate offense and, in the circumstances, evinced a voluntary and distinct intention to move/detain the victim beyond that necessary to commit the separate offense at the place where the victim was first encountered. This factor addresses the license to offend problem. In *Young*, for example, the victim was accosted in his car. The robbers did not stop with movement/detention necessary to obtain the victim's valuables at that place, but removed him therefrom and locked him in the trunk. All of the latter was neither inherent in nor necessary to the commission of the robbery at the place where the robbers first encountered the victim. Evidence of the criminal's scheme may be useful in determining whether a separate additional intention to move the victim exists in a given case.

f. The existence of any significant additional risk to the victim beyond that inherent in the commission of the separate offense at the place where the victim is first encountered. It is immaterial that the additional harm is not planned by the criminal or that it does not involve the commission of another offense.

■ Applying and balancing the foregoing factors in the instant case, we have no doubt that, had the appellant been successful in removing Mrs. R to the more remote spot for the purpose of committing another act of sodomy, or something else, the offense of kidnapping would have been accomplished. *United States v. Young, supra; United States v. Charlton, supra.* We note, parenthetically, that the location and character of the wounds inflicted by the appellant strongly suggest that had Mrs. R been removed to the more remote location, she might not have survived the experience. We are not convinced, however, that the appellant's actions in the circumstances of this case, went beyond

attempted kidnapping. The seizure/carrying away was very brief and there was no holding beyond that incident to the virtually instantaneous asportation itself. Forcible sodomy often involves physical resistance, which can produce a certain amount of scuffling and limited movement as the criminal subdues the victim. This scuffling could well result in movement and control to the extent occurring in this case. The duration of the actual movement does not do violence to the policy of discouraging criminals from moving their victims to more remote/desirable locations. The risk inherent in the actual movement was no greater than that encountered in the forcible sodomy at the place where the appellant first encountered the victim for purposes of his evil scheme (inside the car). The planned movement, however, is of contrary import, the gist of it being a distinct intention to move Mrs. R notwithstanding sodomy—to kidnap her. Thus, while the appellant embarked on a kidnapping course with the requisite state of mind, the victim's brief escape broke the course of the offense at the attempt stage. Consequently, we affirm only so much of the findings related to kidnapping as convicts the appellant of attempted kidnapping.

■ The alleged command influence, diffusely impacting on the law center which processed this trial, was not shown to have had any significant impact on the trial of this particular case. Consequently, no relief is warranted on this issue.

■ We are not convinced beyond a reasonable doubt that the appellant is guilty of assault with intent to commit sodomy (Specification 2, Charge III). Only so much of that verdict is affirmed as finds the appellant guilty of the lesser included offense of assault with a means or force likely to produce death or grievous bodily harm, in violation of Article 128, UCMJ, 10 U.S.C. § 928. In so holding, we need not resolve the matter of the failure of the military judge to instruct on all lesser offenses reasonably raised by the evidence.

■ We find that the offense of forcible sodomy (Specification, Charge I) and the assault with a dangerous weapon (knife brandishment in the car) (Specification, Charge II) are not the same offense and, therefore, not multiplicious for findings purposes. *United States v. Glover,* 16 M.J. 397 (C.M.A.1983). Nor do we find any other findings multiplicity. *See, United States v. Jobes,* 20 M.J. 506 (AFCMR 1985). *See also, United States v. Davis,* 18 M.J. 79 (C.M.A.1984); *United States v. Holt,* 16 M.J. 393 (C.M.A.1983); *United States v. Baker,* 14 M.J. 361 (C.M.A.1983). In so holding, we make no comment on whether the pleading scheme in this case was the most efficient or was ideal. We say only that the pleading in this case was not improper.

We believe the adjudged sentence reflects an accurate assessment by the court members of the factual character of the totality of the actual misconduct in which the appellant engaged. Upon reassessment of the sentence in light of the foregoing dispositions, we find that the sentence as approved on review below is entirely appropriate.

Subject to the foregoing modification, the findings and sentence, as approved on review below are affirmed.

Judge GLADIS and Judge CASSEL concur.

---

**UNITED STATES**

v.